## THE ILLINOIS CENTRAL RAILROAD COMPANY *

*v.*

## ERNEST G. FRANKENBERG *et al.*

1. COMMON CARRIERS—*their liability for the safe delivery of goods beyond their own lines.* Railroad companies are common carriers, and where they receive goods to carry, marked to a particular place, they are bound, *prima facie*, under an implied agreement from the mark or direction, to carry to and deliver at that place, although it be a place beyond their own lines of carriage.

2. If damage result, or a loss occur, in respect to goods thus shipped, under circumstances which would render a carrier liable, the carrier who received the goods in the first instance must account to the owner therefor, whether the damage or loss occurred upon his own line of carriage or upon that of some other carrier on the line of transit. In such case, the contract of the shipper is with the carrier in whose custody he placed the goods.

3. SAME—*of limiting the common law liability of carriers.* But while such is the common law liability of the carrier who receives the goods in the first instance, he may, not by general notice, as that has been held insufficient, but by special contract with the shipper, limit his liability to such damage

---

* This case was submitted at the January Term, 1869, but was necessarily omitted from its proper place in the reports of the cases decided at that term.

or loss as may occur on his own line of carriage. It is allowable for carriers to relieve themselves from their general common law liability by special contract.

4. And it has been held that if a shipper takes a receipt for his goods from the carrier, containing conditions limiting the liability of the carrier in such way as it is competent for him to do, with a full knowledge on the part of the shipper, of such conditions, and intending to assent to the restrictions contained in them, it becomes his contract as fully as if he had signed it.

5. So where a shipper took a receipt from the company to whom goods were delivered in the first instance, marked to a point beyond that company's line, containing this condition: "And it is further especially understood, that for all loss and damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier or forwarder only in whose custody the said packages may actually be at the time of the happening thereof, it being understood that [the company receiving the goods from the shipper] assumes no other responsibility for their safety or safe carriage than may be incurred on its own road": *Held*, the shipper accepting such receipt with a knowledge of its conditions, and intending to assent to the restrictions contained in it, the carrier was thereby relieved of his common law liability for loss occurring beyond his own line.

6. Whether the shipper did accept the receipt with a knowledge of such restrictions, and with the intention to assent to them, was a question for the jury.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was an action of assumpsit brought by Ernest G. and A. W. Frankenberg against the Illinois Central Railroad Company, to recover the value of a shipment of cabbage delivered to the defendants at Bloomington, Illinois, consigned to Columbus, Ohio. The freight was prepaid on the consignment as far as Pana, Illinois, and a guaranty taken for the payment of the charges through from Pana to Columbus. The defendants carried the goods as far as Pana and delivered them in apt time to the Terre Haute & Alton Railroad Company, at that place, and took a receipt from that company for the goods.

The cabbage were delayed after leaving Pana, so that they were spoiled when they arrived at Columbus, and it is sought

by this suit to recover from the defendants for this loss occurring after the goods were transferred by them to another carrier. It appears from the record that on receiving the goods, the defendants gave a receipt or bill of lading, which was received by the plaintiffs, and is as follows:

"BLOOMINGTON STATION, 4 Nov. 1867.

"Received from E. G. Frankenberg, in apparent good order, by the Illinois Central Railroad Company, consigned to Pana, Ill. the following articles as marked and described in the margin, subject to the conditions and regulations as per published tariff of said company, and payment of freight at the rate of —— per 100 ℔s.; and such other expenses or charges as may have accrued upon said articles. It is expressly agreed and understood that the company are not responsible for loss of goods of which the contents are unknown; for leakage of any kind of liquids, breakage of any kinds of glass, carboys of acids, or articles packed in glass, etc. or for loss or damage on hay, hemp, cotton, or any articles the bulk of which renders it necessary to be shipped in open cars, or for damage on perishable property of any kind, occasioned by delays from any cause, or change of weather, or for damage or loss by fire, or for loss or damage on the lakes or rivers, unless it can be shown that such damage or loss occurred through the negligence or default of the agents of the company. And it is further especially understood, that for all loss and damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier or forwarder only, in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the said Illinois Central Railroad Company assumes no other responsibility for their safety or safe carriage than may be incurred on its own road."

On the margin of this receipt was the following:

| "Marks and Consignees. | No. | Description of Articles. | Weight. |
|---|---|---|---|
| J. J. Rickley. | 1 | Car Cabbage. | 15,000 |
| Columbus, Ohio. | | Prepaid to Pana.    $33.00 | |

Charges guaranteed thro' by H. McCurdy.

T. H. & A.

Car 965.

Upon a trial by the court, judgment was rendered for the plaintiffs, and the defendants appeal.

Messrs. WILLIAMS & BURR, for the appellants.

A common carrier is not liable beyond his route, in the absence of an agreement, either express or implied, to so become liable.

The mere acceptance of goods marked to a place beyond the route of the carrier, does not of itself create a contract to deliver at the point so marked.

The mere acceptance of goods marked to a place beyond the route of the carrier, does not, *prima facie*, prove a contract to deliver at the place so marked.     *Van Santvoord* v. *St. John,* 6 Hill, 157 ; *Farmers' & Merchants' Bank* v. *Champlain Transportation Co.* 18 Vt. 113 ; same case, 23 Vt. 186 ; also, 16 Vt. 52 ; *Hood* v. *New York & New Haven R. R.* 22 Conn. 1 ; *Elwood* v. *Naugatuck R. R. Co.* 23 Conn. 457 ; *Naugatuck R. R. Co.* v. *Waterbury Button Co.* 24 Conn. 468.

The doctrine of the liability of a common carrier beyond his route, is a much vexed question, and one upon which it is supposed there exists an irreconcilable difference between English and American courts, and there is what is termed the English and the American rule.   The question has been considerably discussed in this court, but we think it is still an open question, *Muschamp* v. *The Lancaster & Preston Junction Railway Co.* 8 M. & W. 421, being the leading English case, and *Van Santvoord* v. *St. John,* 6 Hill, 157, the leading American case—the rule in Muschamp's case being, that where a carrier receives goods marked to a place beyond his own route, without limiting his responsibility to his own route by express agreement,

the receipt of goods so directed is *prima facie* evidence of an undertaking to carry to the place of destination, although the ultimate destination of the goods be beyond the route of the carrier receiving them.

The English cases have not been uniform, and we insist, with Judge Redfield, in the case of the *Farmers' & Merchants' Bank* v. *Champlain Transportation Co.* 23 Vt. 186, that the rule as laid down in the case of *Garside* v. *The Trent & Mersey Navigation Co.* 4 T. R. 581, that each carrier, in the absence of special contract, is only liable for the extent of his own route, and the safe storage and delivery to the next carrier, is undoubtedly the better, the more just and rational, and the more generally recognized rule upon the subject.

This may be considered the American rule : that the carrier takes upon himself no responsibility as a carrier beyond his own route, (requiring, of course, due care in forwarding the parcel,) unless the usage of the business or of the carrier, or his conduct or language, shows that he takes the parcel as carrier for the whole route. 2 Parsons on Contracts, 212.

We think the question may still be regarded as an open one in this court, as in neither *The Illinois Cent. R. R. Co.* v. *Copeland*, 24 Ill. 333, nor in the case of the same company v. Johnson, 34 Ill. 389, in which the subject is somewhat discussed, did the question necessarily arise. The conflict in the authorities is more as to a rule of evidence than a rule of right ; for giving to Muschamp's case the broadest authority that can be claimed for it, it does not claim that the carrier is bound beyond his own route, unless he contracts to so become bound ; and it only makes the silent acceptance of the goods *prima facie* evidence of a contract to carry to the marked destination, leaving, of course, to the carrier, the privilege of overcoming this *prima facie* evidence, if he can, by other evidence. And certainly the rule has never been carried farther than this, nor can it be. A common carrier is bound to receive goods directed to any point within the termini of his route, upon payment, or offer to pay the usual and customary charges ; but it certainly

will not be contended that he is bound to receive and carry to a point beyond his route.    But whether this court shall adopt one rule or the other, the right of the company to limit their common law liability by special contract is not doubted.    *Ill. Cent. R. R. Co.* v.*Morrison*, 19 Ill. 136 ; and in this case the stipulation in the bill of lading must be given that effect.    *Ill. Cent. R. R. Co.* v. *Read*, 37 Ill. 484 ; *York Co.* v. *Ill. Cent. R. R. Co.* 3 Wallace, 107.

Messrs. Hughes & McCart, for the appellees.

We insist upon the rule as laid down in *Muschamp's case*, 8 M. & W. 421, as being the better rule, in regard to the liability of the carrier beyond his line.

Nothing can exempt a carrier but a special contract; that may, and probably would, in nearly all cases, though Cowen, J. in *Cole* v. *Goodwin*, 19 Wend. 249, in *Camden Trans. Co.* v. *Belknapp*, 21 Wend. 353, and *Clark* v. *Faxton*, ib. 153, which goes further than Belknapp's case, denies that a carrier can, by contract, even, limit or lessen his common law liability.

If, however, the carrier desires to set up a special contract, the burden of proof is on him to show that it was understood and assented to by the shipper, and he must show that its terms were brought home to the knowledge of the consignor.    Redfield on Railways, pp. 71–82.

And it was on this ground that the carrier had entered into a special contract with the shipper, evidenced by a written agreement signed by the shipper as well as the carrier, and had given him a valuable consideration for the lessening of their common law liability, by carrying his freight at reduced rates, that this court base their opinion in the case of *Ill. Cent. R. R. Co.* v. *Morrison*, 19 Ill. 136.

The presumption is a fair one, that the shipper intends to insist on all his rights under the law, rather than that he intends to waive them.    6 Howard, N. Y. 344 ; 24 Ill. 468, Newhall's case ; Angell on Carriers, (ed. 1868,) secs. 235–6–7.    More than this, it has been decided by this court, and by others of

good authority, that common carriers can not by notice, (if brought home to the owners even,) limit or lessen their liability. It is against the policy of the law. *Western Trans. Co.* v. *Newhall,* 24 Ill. 466 ; *Davidson* v. *Graham,* 2 Ohio St. R. 131 : *Graham & Co.* v. *Davidson,* 4 Ohio St. R. 362 ; Angell on Carriers, ed. of 1868, secs. 238–9 ; *Welsh* v. *Pittsburgh & Fort Wayne R. R. Co.* 10 Ohio St. R. 65 ; *Jones* v. *Voorhees,* ib. 145 ; the cases in Wendell, 19 and 21, and Angell, secs. 240 to 243.

Of the same general tenor are *Gould* v. *Hill,* 2 Hill, N. Y. 623 ; *Fish* v. *Chapman,* 2 Kelly, 349 ; and in *Bennett* v. *Dutton,* 10 N. H. 487, the opinion of the court leans our way. In *Thomas* v. *Boston & Prov. R. R.* 10 Met. 375, the defendants escaped solely because they were not common carriers.

The rule we contend for, the ancient rule, is held in *Bean* v. *Greene,* 12 Maine, 422 ; and *Beckman* v. *Shouse,* 5 Rawle, 189.

The rule is a reasonable one, and the courts say there is danger in relaxing it. *Eagle* v. *White,* 6 Wheaton, (Pa.) 519.

We insist that the receipt given in this case did not amount to a special contract to exempt the carrier from his common law liability for the safe delivery of the freight at the place of destination. *Weed* v. *Schenectady & Saratoga R. R. Co.* 19 Wend. 534 ; *Wilcox* v. *Parmelle,* 3 Sandf. 610 ; *Chouteau* v. *Leach,* 18 Pa. St. R. 224 ; *Noyes* v. *Rutland R. R. Co.* 27 Vt. 110 ; *Dorr et al.* v. *N. J. St. Nav. Co.* 1 Kernan, 11 N. Y. 485 ; *Teall* v. *Sears,* 9 Barb. 317 ; *Ill. Cent. R. R. Co.* v. *Copeland,* 24 Ill. 332 ; *West. Trans. Co.* v. *Newhall,* 24 Ill. 466 ; *Ill. Cent. R. R. Co.* v. *Johnson,* 34 Ill. 389 ; Angell on Carriers, (ed. 1868) secs. 244 to 250, and note.


Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court :

The question presented by this record, is one of great importance to the public, and to the railroad interests of the country, and has received our most careful consideration.

It is a question on which the courts of this country are not in harmony with themselves, nor with those of England, to

whose decisions we are accustomed to refer as evidence of what the common law is, on any subject which has engaged their deliberations.

The question is, as to the extent of the liability of a railroad company as common carriers of goods and property.

While there is no difficulty in defining, in general terms, when the liability of a common carrier begins, the courts of this country are not agreed as to the point when it terminates.

A common carrier is defined to be one who undertakes, for hire, to transport the goods of such as choose to employ him, from place to place. Railway companies are under obligations to receive and transport all goods which may be offered to them for such purpose, and without delay. They can not lie by, as the wagoners in early times were accustomed to do, for a rise in the price of freights. They are regarded by all courts as common carriers, resting under a duty to transport such articles as may be delivered to them in the course of their business, and their liability commences when the goods are delivered to their agent authorized to receive them. They may demand the freight money in advance, and if not paid, may refuse to carry the goods, but when they are received they are at the risk of the carrier, and from which time he is regarded as an insurer, and held to the most stringent responsibilities, from which he can only be relieved by the operation of one of two causes, the act of God or the public enemy. Public policy has always demanded this rule, inasmuch as the goods are entirely in the power of the carrier, and it being so easy for him to conceal his fraud or misconduct, and so difficult for the owner to prove it, that the law does not permit the inquiry, but supplies the want of proof by a conclusive presumption. *Porter* v. *Chicago & Rock Island R. R. Co.* 20 Ill. 407 ; *Baldwin* v. *American Express Co.* 23 ib. 197.

The liability of the carrier commencing with the receipt of the goods, it necessarily continues until they are delivered by him at their place of destination, where the owner or consignee is bound to be present and receive them, and pay the freight

for them, if not previously paid.    If he be not present to receive
the goods, they can be placed in a safe and sufficient warehouse,
when the liability of the carrier ceases and that of warehouse-
man begins.

The important question now arises, is he thus bound to carry
and deliver to a point or place not on his route?

This is a question not settled by the courts of this country,
though the received doctrine may be said to be, that the car-
rier.is not responsible beyond his own route, except upon his
special undertaking so to be liable.

By the law of common carriers, their liability was fixed on
the receipt of the goods to be carried.    They are insurers of
the goods, and if not delivered at their place of destination,
they are accountable for them, and when called upon to account
for them, the *onus* of proof is upon them, and they are chargea-
ble with their value, unless the loss was caused by a force supe-
rior to human agency, which no foresight could have guarded
against, or by the public enemy.

This is the extent of the liability of common carriers by the
common law.    The receipt of goods by them is all that is nec-
essary to fix this liability, so that, if a parcel or package be
delivered to a railroad at Chicago, marked for Louisville, Ken-
tucky, or any other place off their route, and they receive it
to carry, they are bound, by this rule of the common law, if the
parcel or package be lost, to account to the owner for its value.
The contract of the shipper is with the carrier in whose cus-
tody he placed the goods.

A responsibility so vast being cast upon carriers by the com-
mon law, it soon became a question how they could remove or
lessen it.    A resort was had to a general notice, which was held
by this court and other courts to be insufficient.    *Western
Transportation Co.* v. *Newhall*, 24 Ill. 466.    But it was held by
this court, in the case of the *Illinois Central R. R. Co.* v. *Morri-
son et al*, 19 ib. 136, that such carriers may relieve themselves
from their general liability by special contract.    In that case

Morrison, by his writing, under seal, in consideration of a reduction of the freight charges upon a lot of cattle, assumed the risk of transportation, and released the company from all claims which might arise from damage or injury to the stock while in the cars, or for delay in its carriage, or for escape from the cars, and, generally, from all claims except such as might arise from the gross negligence or default of the agents or officers of the company.

We have examined all the cases cited upon both sides of this question, and pondered them, anxiously desiring to recognize a rule which, while it shall not perplex and injure the commercial interests of the country, shall, at the same time, protect the carrier's interest, or, at least, be of so much service to it that the proprietors of that interest may know and understand the full extent of their obligations to the public.

So long ago as 1860, this court, in the case of this same company against Copeland, 24 Ill. 332, expressed a decided partiality for the rule in *Muschamp's case*, 8 Mees. and Wels. 421, so much relied on by the appellee, and in which case all the authorities, English and American, were fully examined, and we said, though this point was not in the case, we were inclined to yield to the force of the reasoning of the English courts, on principles of public convenience, if no other, and to hold, when a carrier receives goods to carry, marked to a particular place, he is *prima facie* bound to carry to and deliver at that place. By accepting the goods so marked, he impliedly agrees so to do, and he ought to be answerable for the loss.

Again, in the case of the same company against Johnson, 34 ib. 389, there was an express understanding to transport the goods to Wheeling, but the court, referring to Copeland's case, *supra,* considered that case as holding that a carrier who receives goods to carry, marked to a particular place, was bound to carry to, and deliver at, that place—that it was an agreement implied from the mark or direction on the goods, and accepting them so marked, that the liability arose.

7—54th Ill.

Now, on the point of public convenience, which consideration had great weight with us in determining which rule should be adopted, it seems to us that consignors of the productions of our country, or other property, by railroad, should not be required, in case of loss or damage, to look for remuneration to any other party than the one to which they delivered the goods. It would be a great hardship, indeed, to compel the consignor of a few barrels of flour, delivered to a railroad in this State, marked to New York city, and which are lost in the transit, to go to New York, or to the intermediate lines of road, and spend days and weeks, perhaps, in endeavors to find out on what particular road the loss happened, and having ascertained it, in the event of a refusal to adjust the loss, to bring a suit in the court of New York for his damages. Far more just would it be to hold the company who received the goods in the first instance, as the responsible party, and the intermediate roads its agents to carry and deliver, and it is the most reasonable and just, for all railroads have facilities not possessed by a consignor, of tracing losses of property conveyed by them, and all have, or can have, running connections with each other. Above all, when it is considered the receiving company can, at the outset, relieve itself from its common law liability by a special and definite agreement, such a rule can not prejudice them. The rule being known, all parties can readily accommodate their business to it, and no inconvenience can result to any one from its operation.

In the case of the *Illinois Central R. R. Co.* v. *Morrison*, 19 Ill. 136, there was a formal stipulation under hand and seal, by which the consignor, for a valuable consideration, agreed to release the company from their common law liability as carriers.

In *Adams Express Co.* v. *Haynes*, 42 ib. 89, it was said, if a shipper takes a receipt for his goods from the company, with a full knowledge of its terms and conditions, intending to assent to the restrictions contained in it, then it becomes his contract as fully as if he had signed it.

By such a contract, the rights and duties of the parties to it must be governed, and if the stipulations in it go to limit the common law liability, and they plainly appear in the instrument, and are not covertly inserted in it, and are understood by the consignor, then it must be enforced as any other contract of parties made in good faith.

Testing this case by these considerations, the receipt or bill of lading executed by appellants and accepted by the consignors, reciting, as it does, that the goods in question were consigned to Pana, and charges paid to that point, and that appellants should not be liable for loss or damage save on their own road, amounts to a special contract, relieving the company from their common law duty.

It is a question for the jury to determine, whether the terms of the receipt were understood by the consignors and assented to by them. If they were, they are bound by them.

The fact that the charges were guaranteed from Pana, was not for the benefit of appellants, but for the benefit of the connecting road, whose usage was to decline the receipt of perishable articles, as these were, unless the charges were guaranteed.

We think justice would be promoted by sending this cause back for trial, in the light of the views here presented, and of the rule we think necessary to be established for the government of all such transactions, and for that purpose reverse the judgment and remand the cause.

*Judgment reversed.*

After the foregoing opinion was prepared, a re-argument of the case was had, at the January term, 1871, before the court as at present organized under the new constitution, when the opinion was agreed to by a majority of the court, Mr. Chief Justice LAWRENCE and Justices MCALLISTER and THORNTON, dissenting.