# The St. Louis Southwestern Railway Company

*v.*

## The Elgin Condensed Milk Company.

*Opinion filed October 24, 1898.*

1. Carriers—*carrier may assume liability as carrier to points beyond its terminus.*  A common carrier may contract to deliver goods to a point beyond its terminus, and thereby become liable as carrier for the whole distance, the connecting carriers being regarded as its agents, for whose negligence it is liable.

2. Same—*contract not superseded by bills of lading from connecting lines.*  An oral contract between a shipper and a duly authorized agent of an intermediate carrier, to receive perishable goods in refrigerator cars furnished by it to the forwarding line and transport them in the same cars to a point beyond its line, is not superseded by a bill of lading issued to the shipper by the forwarding line, which seeks to limit the latter's liability.

3. Appeals and Errors—*not every unguarded remark by the court is ground for reversal.*  It is only when an unguarded remark by the court, in the presence of the jury, upon a matter of fact for the latter's determination, is calculated to prejudice the rights of the defeated party that it is ground for reversal.

4. Same—*Supreme Court cannot review the facts in suits at law.*  All questions of fact in suits at law are conclusively settled by the Appellate Court's judgment of affirmance.

*St. Louis S. W. Ry. Co.* v. *Elgin Milk Co.* 74 Ill. App. 619, affirmed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Alexander county; the Hon. Joseph P. Robarts, Judge, presiding.

Appellee manufactures condensed milk at Elgin, Illinois, and sells part of its product at Galveston, Texas. From Elgin to Galveston there is railroad connection *via* the Chicago and Northwestern railroad from Elgin to Dixon, Illinois; Illinois Central railroad from Dixon to Cairo; St. Louis Southwestern railway (the appellant's line, known as the "Cotton Belt,") from Cairo, *via* Bird's Point, Missouri, and Texarkana, Texas, to Tyler, Texas; and International and Great Northern railroad from Tyler

to Galveston. There are three shipments of milk claimed to be damaged. There are six counts in the declaration, —two counts, respectively, for each shipment. The right of action in each count is based upon an alleged parol agreement, which agreement is set out in the first, third and fifth counts, in substance as follows: That defendant was a common carrier, and operated a railroad line in Cairo, in connection with a railway from Bird's Point, Missouri, through part of Texas, and kept an office at Cairo; that by its authorized agent, in consideration of plaintiff's shipping its milk from Elgin over the Chicago and Northwestern railway to Dixon, thence over the Illinois Central to Cairo, so that it might be transported to its destination by defendant, it agreed to furnish plaintiff refrigerator cars at Elgin, and that the milk, when loaded therein by plaintiff and received by defendant at Cairo, should not be removed therefrom, but should be transported in said cars by defendant over its lines and other lines to place of destination. Counts 2, 4 and 6 state the agreement, in substance as follows: Defendant agreed that in consideration that plaintiff would cause same to be delivered to defendant at Cairo, defendant would furnish plaintiff, at Elgin, refrigerator cars in which to load the milk and to be delivered in such cars to defendant at Cairo, and would receive the milk in such cars and carry the same to destination, and not remove the milk from such cars or suffer the same to be done until the same had reached destination.

The declaration charges that in pursuance of said agreement defendant furnished three Illinois Central refrigerator cars, in which plaintiff made certain shipments of milk from Elgin to Galveston, viz.: shipment June 6, 1893, 400 cases milk, value $1305, Illinois Central refrigerator car 16,210, delivered to defendant at Cairo June 11, 1893; shipment May 6, 1893, 380 cases milk, value $1300, Illinois Central refrigerator car 16,346, delivered to defendant at Cairo May 11, 1893; shipment June 27, 1893, 410

cases milk, Illinois Central refrigerator car 16,481, delivered to defendant at Cairo June 29, 1893; that defendant received said cars under the contract at Cairo, but that instead of sending them through to destination without trans-shipment, and in violation of its contract, defendant transferred the milk from refrigerator cars into box cars and then sent it to Galveston, whereby the same was damaged, etc.

Defendant pleaded non-suit. Judgment was rendered for $2253.90 damages and costs of suit. On appeal to the Appellate Court for the Fourth District that judgment was affirmed, and this appeal is prosecuted from that judgment.

GREEN & GILBERT, for appellant.

WILLIAM N. BUTLER, and ANGUS LEEK, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

By the adjudication of the trial and Appellate Courts the questions of fact have been conclusively determined. By the judgments of those courts it is settled that the contract was made as alleged in some of the counts of plaintiff's declaration; that it was made by an authorized agent; that the milk was shipped from Elgin, Illinois, in good condition, in refrigerator cars, under said contract, and was delivered to appellant at Cairo, Illinois, in those cars, and was by appellant transferred to box cars and in them carried to Galveston, Texas, and was damaged by being so transferred from refrigerator to box cars and carried therein from Cairo to Galveston; that the cases of milk returned to the depot of the International and Great Northern Railroad Company at Galveston were damaged, and were disposed of at the best price obtainable at the nearest market; that the damage sustained was to the extent as found by the jury, and that the verdict was not excessive.

The appellant contends that the verbal agreement was superseded by the subsequent written contract. The written contract relied upon as superseding the verbal agreement was that expressed in the bills of lading issued by the Chicago and Northwestern Railroad Company, and which sought to limit its liability. This suit is not brought on the contract embraced in the bills of lading, but on a separate and distinct contract entered into between appellant and appellee, which was in no manner affected by the bills of lading. The antecedent contract on which this suit was brought was entirely independent and distinct from that in the bills of lading, and was not superseded thereby.

Objection is made to the admission of expert evidence, because the witnesses sought to be examined did not possess sufficient knowledge in reference to the effect of heat and cold on milk, or the effect of transferring condensed milk from refrigerator cars to box cars and carrying it a long distance in the latter. The witnesses thus examined had from eight to twenty-five years' experience in manufacturing, handling, dealing in and shipping condensed milk, and from their answers and experience it appears they were competent as experts. The hypothetical question put to witnesses, and allowing their testimony, were not error.

The agent of the terminal road at Galveston was called as a witness. It had been shown that 662 cans of milk of the different shipments made to appellee's consignee were by the latter returned to the depot of that terminal road. Appellant had sought to show that the agent of that road was not in any manner its agent, and the following question was asked the witness by appellant's counsel: "I will ask you if you or your railroad company had any knowledge from Mr. Ujffy as to when these 662 cans of milk were brought back to the depot, except the general knowledge that he desired them shipped when a sufficient quantity accumulated." To this ques-

tion appellee's counsel objected, and the objection was sustained. In ruling on the objection the judge stated, in its discussion, "I hold as a proposition of law Mr. Becker was the agent of defendant," to which remark and ruling of the court defendant objected and excepted. Thereupon the court said to the jury: "Gentlemen, my remark as to the law was addressed to the attorneys, and not to you, and you will disregard it. At the proper time I will instruct you in writing as to what the law is."

A common carrier may enter into a contract to carry to a place beyond the terminus of its route, and thereby become liable as a carrier for the whole distance. All connecting carriers, under such a contract, become the agents of such contracting carrier, for whose negligence or default it is responsible. The contracting carrier can not evade, by contract, the consequences of the negligence of such connecting carriers any more than the results of its own. (*Illinois Central Railroad Co.* v. *Frankenberg*, 54 Ill. 88; *Chicago and Northwestern Railroad Co.* v. *Northern Line Packet Co.* 70 id. 217; Hutchinson on Carriers, 117.) Under the evidence that was before the jury at the time of this ruling the court could well hold the terminal road and its agent were the agents of the contracting road; but as the question was one of fact it was for the jury, and in ruling on the admissibility of evidence it should be in such a manner as that the judge should express no opinion on the evidence. Every unguarded expression in stating reasons for rulings cannot be treated as error requiring a reversal. It is not unusual, in ruling on the admissibility of evidence, to refer to antecedent evidence and the principle deduced therefrom, and unless inadvertent remarks of the court operate to the injury of appellant it will not be sufficient cause to reverse. (*Birmingham Fire Ins. Co.* v. *Pulver*, 126 Ill. 329.) In this case the jury were promptly instructed that the remark as to the law was addressed to the attorneys and should be disregarded by them, as they would be instructed in writing as to the law.

Objection is made to the giving of instructions for the plaintiff and in refusing and modifying instructions asked by the defendant. Two instructions were given for the plaintiff and thirty-one asked by the defendant, twenty of which were given as asked, three modified and given, and eight refused. Those given for the plaintiff correctly stated the law. Those given for the defendant stated the law favorably in every phase of the question presented by the defense. There was no error in refusing or modifying instructions.

This case is one to be determined from the facts, and their determination by the circuit and Appellate Courts precludes our consideration of them.

From a careful consideration of the record we find no reversible error, and the judgment of the Appellate Court for the Fourth District is affirmed.

*Judgment affirmed.*