# John Pley, Appellee, v. Harry C. Lavette, Appellant.

## Gen. No. 16,044.

1. PLEADING—*effect of general issue in action of tort.* In an action of tort the plea of not guilty controverts the truth of such allegations in the declaration as the plaintiff is bound to prove and no more.

2. PLEADING—*when plea of son assault demesne unavailing.* If the defendant by his testimony expressly disproves a plea of *son assault demesne* the defense interposed by such plea is to be totally disregarded and the claim of justification is to be considered no longer in the case.

3. INSTRUCTIONS—*when erroneous will not reverse.* An erroneous instruction will not reverse if the theory of defense therein set forth has been expressly repudiated by the defendant's own testimony.

4. INSTRUCTIONS—*predicated upon evidence.* An instruction is properly refused which is not predicated upon any evidence in record.

5. INSTRUCTIONS—*upon what theory party entitled to.* A party is only entitled to instructions on his theory of the case if such theory is disclosed by the pleadings and is supported by evidence.

6. INSTRUCTIONS—*when motion for peremptory properly denied.* A motion for a peremptory instruction is properly denied if there is any evidence in the record fairly tending to support the material allegations in the declaration.

7. EVIDENCE—*when upon quantum of proof properly refused.* It is proper for the court to refuse an instruction which requires the plaintiff to prove his case beyond a reasonable doubt if the pleadings do not specifically charge a criminal offense.

8. TRIAL—*what essential to render remarks of court ground for reversal.* It is only where an unguarded remark of the court in the presence of the jury upon a matter of fact that is for the determination of the jury, is calculated to prejudice the rights of the defeated party, that it is ground for reversal.

9. VERDICTS—*when not excessive.* Held, in a personal injury action, that a verdict for $2,000 was not excessive, where it appeared that a shot from a revolver of the defendant penetrated the right arm of the plaintiff below the shoulder joint, passed through the arm, shattered the bones, passed into the right lung, where it continued to remain, and where it further appeared that the plaintiff suffered pain and was permanently injured.

Trespass. Appeal from the Circuit Court of Cook county; the HON. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed February 14, 1912.

HUGH J. KEARNS, for appellant.

JAMES P. GRIER, for appellee; PHILIP CLARKSON, of counsel.

MR. JUSTICE GRAVES delivered the opinion of the court.

Appellee was in the employ of appellant as a farm hand and was to receive as part of his compensation for such services his board and lodging in the house on the farm where he was employed. The household consisted of appellee, appellant and a Mrs. Case, the housekeeper. On the evening of the day in question, while these three persons were partaking of the evening meal, a controversy arose over some trivial matter between appellant and the housekeeper, but in which all three took more or less part. Appellant, becoming angry, got up from the table and either by accident or design tipped the table over, scattering the remains of the meal and the dishes about the floor and breaking some of the dishes. The preponderance of the evidence tends to show that both appellant and the housekeeper were intoxicated. After appellant tipped the table over appellee took hold of him and forced him into his bedroom and locked the door. Shortly thereafter, appellant shot through the door with a revolver, the ball striking appellee in the arm near the shoulder and, passing through, it lodged in his lung. The preponderance of the evidence tends to show that before that time appellant had told appellee "to take care of him if he did anything wrong, if he broke up the house." To recover damages for the injuries caused to his person by the revolver ball, appellee brought this suit in trespass. The pleadings are unsatisfactory. There are two counts in the declaration. The first count charges that appellant assaulted appellee with a loaded pistol and shot him. The second count is a hybrid and charges that appellant "with force and arms and with-

out right or provocation, wantonly, wilfully, carelessly and negligently'' assaulted appellee with a loaded pistol and shot and wounded him. Whether it was the pleader's intention in this count to claim for negligence or for trespass, we venture no opinion. Courts have sometimes used the expression ''wanton and wilful negligence,'' but we cannot conceive how one can be guilty of a *careless, negligent, wanton* and wilful assault. To this declaration appellant interposed two pleas. The first is a plea of not guilty, which controverts the truth of such allegations in the declaration as the plaintiff is bound to prove and no more. Chicago Title and Trust Co. v. Core, 223 Ill. 58. The second is a plea of *son assault demesne,* in which appellant admits the trespass in the declaration mentioned and justifies on the ground that if he had not committed the trespass as charged in the declaration, he would have been ''beaten, bruised and ill-treated'' by appellee. Appellee joined issue on these pleas. It is perhaps fair to say that since these pleadings were filed there has been a change in attorneys for both parties.

There was no proof offered by appellant in support of his plea of *son assault demesne,* but on the contrary he testified explicitly that after he had been locked in his room for two minutes, and after he had repeatedly warned appellee to go away out of danger, because he, appellant, was going to shoot the lock to pieces and appellee might get hurt, and after everything was quiet on the other side of the door and appellant thought appellee had gone away, appellant shot through the door for the purpose of shattering the lock. Every syllable of this testimony expressly negatives the averment in his plea that he shot in defense of his person or in fear of being bruised and beaten.

Appellant's plea of *son assault demesne* being expressly disproved by his own testimony, the issues were narrowed down to those formed on the first plea, name-

ly: whether appellant had committed the trespass complained of. Whether he was justified in committing it is no longer in the case. The ball fired from the pistol of appellant struck and injured appellee. The evidence shows that when the shot was fired by appellant he. was in an intoxicated condition and was angry and quarrelsome. He had just been forced into his bedroom and locked in by appellee. He testifies that appellee used considerable force and much vile language at the time, applying to appellant offensive and opprobrious epithets such as would have a tendency to inflame the passions of a man, particularly if he were intoxicated. It was dark in the room where appellant was confined. He was just inside the door and he testified he placed his hand about where he thought the lock was and discharged the pistol. Just where the ball went through the door the proof does not show. Appellant says it was a little above the lock, and the physical evidence shows that it was high enough to strike appellee, who was a man of mature years, in the shoulder. To say the least, it seems incredible that a man in a dark room, intending to shoot a lock from the door, should not in some way have located the lock before firing the shot, or that he could have expected to hit the lock by firing in the general direction of where he thought it was. It is also inconceivable that appellant could have expected to free himself from the room by breaking the lock to the door, which common knowledge and observation would indicate instead of releasing him would more than likely so effectually destroy the mechanism of the lock as to prevent it from being operated even with the key. We think all reasonable minds must agree that the preponderance of the evidence fairly tends to show that in firing the shot, appellant was actuated by a spirit of malevolence and revenge towards appellee rather than by any hope of hitting the lock in the dark and thereby releasing himself, and that the jury were warranted by the evidence in finding the defendant

guilty, notwithstanding the fact that he testified to the exercise by him of the most solicitous care to have appellee go to some safe place where he would not be injured when appellant should fire at the lock.

The contention of appellant that appellee had no right to recover, because he was himself engaged in the committing of an unlawful act at the time he was injured is without foundation on the facts in this case. Aside from the fact that the evidence tends to show appellant had asked appellee to take care of him if he was doing anything wrong, or was breaking up the house, it was no more unlawful to restrain appellant after he had tipped over the table and broken the dishes, either in a drunken frenzy or in a condition of irresponsibilty, than it would be for a friend of an intoxicated person to take his money and valuables from him for the purpose of preventing the same from being squandered or lost.

Appellant complains of the rulings of the court on the admission of evidence that appellant was drunk; that the injuries were permanent; that appellant had requested appellee to take care of him; that the witness who was a doctor could tell from objective symptoms whether there was an inability to move the joint injured by the ball; that the X-Ray plate was a correct likeness of what it purported to show; that the X-Ray plate was admitted in evidence and exhibited to the jury; and that an X-Ray expert was allowed to interpret the X-Ray plate taken of the shoulder and part of the chest of appellee; and to state that it showed a metal substance in the chest between the fourth and fifth ribs, when the plate did not show such substance. Without going over these several objections seriatim and at length in this opinion, an examination of the record discloses no error in the rulings of the court in the respects complained of, but does disclose that such rulings were directly in accord with the well established rules in relation to the admissibility of evidence. As to

the last objection that the expert was allowed to state that a metal object was shown in the plate when no such object appears there, appellant asks this court to examine the plate offered in evidence, which has been certified here for our inspection. This we have done and find that a shadow in the exact form of the side view of a large revolver bullet is plainly visible in the locality testified to by the expert.

Instruction No. 7 given at the instance of appellee and objected to by appellant is substantially correct, as is held in Harrison v. Ely, 120 Ill. 83, and Chicago Traction Co. v. Mahoney, 230 Ill. 562, and cases there cited.

Appellee's instruction No. 8 is criticised because it had a tendency to minimize the disorderly conduct of appellee and because it limits the defense of self-defense to cases of actual danger and necessary self-defense. This instruction is faulty, and the giving of it would likely require a reversal of the judgment, if the claim that appellant acted in self-defense had not been expressly repudiated by appellant's own testimony, but as it has been so repudiated, this instruction could have done him no harm.

Appellee's instruction No. 9 applies to the law of self-defense, and while it is erroneous, no possible harm could have resulted from its being given for the reason above stated in reference to instruction number eight. Appellee's instruction No. 10 is substantially correct, and even if not technically so, it is, like instructions eight and nine, in relation to the doctrine of self-defense which is not now in this case.

Appellant's refused instruction No. 1 was predicated on a finding by the jury that appellee had voluntarily engaged in a fight with appellant. There is no evidence in the record that appellee engaged in a fight with appellant. There was no evidence of a fight with any one. True, appellee took hold of appellant and pushed him along, stumbling as he went, and apparently intoxi-

cated, into his room and locked him in, but appellant did not resist and there was no fight.

Appellant's refused instruction No. 2 is included in all essential particulars in his given instruction No. 2. Appellant's refused instructions Nos. 3, 5, 9 and 14 had reference to the doctrine of self-defense and for the reasons already stated had no place in this case. Appellant's refused instructions Nos. 6, 8 and 19 announce the rule to be that appellee must prove his case beyond a reasonable doubt. That is not a correct statement of the law in this case. The pleadings do not specifically charge a criminal offense and the rule is not applicable. Miller v. Balthasser, 78 Ill. 302; Woods v. Dailey, 211 Ill. 495; People v. Sullivan, 218 Ill. 419; McInturff v. Ins. Co., 248 Ill. 92.

Appellant in his refused instruction No. 7 has undertaken to lay down the rule as to the right of a person who is being unlawfully restrained of his liberty to defend himself against being so restrained, and the instruction closes with the words, "if you further find from the evidence that the plaintiff, John Pley, was injured by the defendant at the time when the plaintiff, John Pley, was engaged in committing the offense of false imprisonment against the defendant and while the defendant was defending himself against the said offense or its further continuation, then you should find the defendant, Harry C. Lavette, not guilty." The plea of *son assault demesne* filed in this case attempts to justify the trespass charged (and admitted by the plea) on the ground of self defense against impending physical injury or, following the language of the plea, "* * * that plaintiff just before said time * * * with force and arms * * * made an assault upon the defendant and would have beaten, bruised and ill-treated him if he had not immediately defended himself against the plaintiff * * *." There is nothing in the plea undertaking to justify appellant for attempting to release himself from a false imprisonment. Neither is there

anything in the evidence tending to support such a defense even if it had been properly pleaded. Appellant testified he had been locked in the room for two minutes and he supposed appellee had gone away out of danger, as he had been requested by appellant to do, before he, appellant, discharged the pistol, thereby plainly negativing the supposed facts on which the instruction was based, namely: that appellee was engaged in committing the offense of false imprisonment and appellant was defending himself against such offense. A party is only entitled to instructions on his theory of the case, if such theory is disclosed by the pleadings and is supported by evidence. The theory on which this instruction was based is not disclosed by the pleadings and is expressly disproved by the testimony of appellant himself. There was no error in the court's rulings on the giving and refusing of instructions.

The peremptory instruction asked by defendant was properly refused. There was evidence in the record fairly tending to support all the material averments in the declaration. Under that state of proof it is improper to direct a verdict for the defendant. Libby, McNeill & Libby v. Cook, 222 Ill. 206. That counsel for appellant and the trial court considered there was evidence in the record not only sufficient to warrant the jury in finding appellant guilty, but conclusive on that point, if appellant's affirmative defense was not considered, is shown by the fact that counsel for appellant, at the close of all the evidence and before the final peremptory instruction was asked, moved the court to award him the opening and closing argument to the jury, and by the fact that the court accorded him that right. Upon no other theory than that the trespass was either admitted by the pleadings or conclusively proven by undisputed evidence could appellant have been entitled to the opening and closing arguments. In either event the peremptory instruction was properly refused.

There was nothing in the remarks of the court that

could have prejudiced the rights of appellant. It is only where an unguarded remark of the court in the presence of the jury upon a matter of fact that is for the determination of the jury, is calculated to prejudice the rights of the defeated party, that it is ground for reversal. St. L. S. W. Ry. Co. v. Elgin Condensed Milk Co., 175 Ill. 557. Even an improper remark by the court will not be sufficient to reverse a case where it is apparent the verdict could not have been different than the one rendered. Highley v. Metzger, 187 Ill. 237. On the facts in this case we are unable to see how any fair-minded jury could have rendered a different verdict than the one they rendered here.

The verdict and judgment was for appellee for $2,000. Appellant insists this is excessive. The testimony fairly tends to show that the ball shot from the revolver of appellant penetrated the right arm of appellee about an inch below the shoulder joint, passed through the arm, shattered the bone, passed into the body and lodged in the right lung, where it now remains; that appellee was in the hospital several weeks in a serious condition; that the use of his arm is impaired; that he cannot do hard manual labor; that his earning capacity is impaired; that he suffers pain when the weather changes; and that his injuries are permanent. We think the verdict was not excessive, even on the basis of compensation. Besides that, we think the preponderance of the evidence fairly tends to show a state of facts upon which the jury might well have included in their verdict a very substantial amount by way of vindictive damages in addition to what they allowed as compensation.

A careful scrutiny of this record discloses no reversible error. The judgment is, therefore, affirmed.

*Judgment affirmed.*