## Henry Fesser, Appellee, v. Chicago & Illinois Midland Railway Company, Appellant.

1. CARRIERS, § 186*—*when connecting carrier agent of initial carrier.* A connecting carrier is the agent of an initial carrier contracting to deliver goods beyond its terminus.

2. CARRIERS, § 188*—*when initial carrier liable for negligence of connecting carrier.* An initial carrier which contracts to deliver goods beyond its terminus to a commission company is responsible for the negligence or default of a connecting carrier, a stock yards company, in neglecting to promptly place several carloads of hogs at the chutes of the commission company.

3. CARRIERS, § 3*—*when stock yards company is a common carrier.* A stock yards company which has its own tracks and furnishes facilities to shippers, buyers and traders in live stock, especially in conveying stock to side tracks and chutes apportioned to commission houses, is a common carrier.

4. CARRIERS, §. 249*—*when peremptory instruction properly refused in action for damage to live stock.* It was not error to refuse a peremptory instruction requested on the ground that there was a written contract of shipping, in an action by a shipper against a carrier of stock for damages sustained by injury to live stock, delay in shipment and decline in market, where the defendant made no objection to plaintiff's evidence, and the defendant reme-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

died any defect in plaintiff's proof by introducing the bills of lading after refusal of the instruction.

5. CARRIERS, § 234*—*what constitutes unreasonable delay in shipping live stock.* A delay by a carrier of stock in leaving car several hours on the tracks of a stock yards company, only a quarter of a mile from their destination, is unreasonable.

Appeal from the Circuit Court of Christian county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed December 11, 1914.

WALTER M. PROVINE, for appellant.

J. E. HOGAN and W. B. McBRIDE, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Henry Fesser brought this action against the Chicago & Illinois Midland Railway Company and the Illinois Central Railroad Company to recover damages averred to have been sustained by reason of loss caused by damage to stock, delay in shipment and decline in the market. The suit was dismissed as to the Illinois Central Railroad Company. The original declaration contained the common counts only. Leave was obtained on the day the case was tried to file an additional count. The additional count avers that the defendant, the Chicago & Illinois Midland Railway Company, was on, etc., operating a certain railroad extending through the village of Kincaid in Christian county, and connecting with the Illinois Central Railroad, to the city of East St. Louis and the National Stock Yards in the State of Illinois, and that plaintiff delivered three carloads of hogs at the village of Kincaid to the Chicago & Illinois Midland Railway Company to safely and securely carry them from Kincaid to the National Stock Yards in East St. Louis. It then avers the duty of the carrier and that the defendant failed, etc., and negligently caused said shipment to be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

434    APPELLATE COURTS OF ILLINOIS.

Fesser v. Chicago & Illinois Midland Ry. Co., 193 Ill. App. 432.

delayed whereby said hogs shrunk and depreciated in weight, and because of the careless manner of handling said hogs, five were killed, others crippled, and plaintiff was obliged to accept a lower price on a declining market, etc. The common counts were then withdrawn. A jury was impaneled and after the evidence was substantially closed, the additional count was amended by interlining that the: "Defendant agreed to safely and securely carry and deliver said stock from the village of Kincaid to the firm of Woodson-Fennewald Live Stock Commission Company, at their unloading chutes in the National Stock Yards in East St. Louis, Illinois."

The jury returned a verdict in favor of plaintiff for $150, on which judgment was rendered and from which the defendant appeals.

The evidence shows that appellee shipped three carloads of hogs on June 2, 1913, from Kincaid over the appellant's railroad consigned to the Woodson-Fennewald Commission Company in the National Stock Yards in East St. Louis. The stock was loaded after 11 o'clock in the forenoon. The train carrying the hogs left Kincaid about 12:30 that day, and at Pawnee Junction the cars with the hogs were transferred to the Illinois Central Railroad about 5 p. m., that afternoon. The appellee did not go on the train carrying the hogs but went on a passenger train leaving Kincaid for East St. Louis about 4 o'clock p. m. He saw the hogs at Pawnee Junction and testified they were hot when he saw them there, and that he requested the agent of appellant that they be watered and that the agent said they were not on his line of railroad, that they had been transferred to the Illinois Central. The evidence shows that the hogs arrived in East St. Louis the next morning about 5:30 and the cars were placed by the Illinois Central on the tracks of the National Stock Yards Company at 7:50 that morning about a quarter of a mile from the chutes, where they re-

mained until noon when the market had closed for the day.

The appellee testified that he told the agent of appellant at Kincaid at the time the hogs were being loaded that the hogs were to be consigned to the Woodson-Fennewald Commission Company, National Stock Yards, East St. Louis. There was no objection to this proof. Two bills of lading were made out by the agent, one for one car the other for two cars. These bills of lading were produced and introduced in evidence by appellant. The agent testifies that these were made out just before the passenger train left about 4 o'clock. They are very imperfect, neither contains the date of the year. One has no consignee named therein. The bill for the two cars is consigned from "Kincaid, Ill. Station to East St. Louis Station, consigned to Woodson-Fennewald Comm. Co." The evidence is clear that appellant received the hogs consigned to the Woodson-Fennewald Company at the East St. Louis Stock Yards.

The proof shows that the National Stock Yards at East St. Louis have their own tracks and that different commission houses, among them the Woodson-Fennewald Commission Company, have certain side tracks apportioned to them and certain chutes to each commission house. The National Stock Yards under the evidence is shown to be a common carrier furnishing facilities to shippers, buyers and traders in live stock.

The rule is that when a carrier contracts to deliver goods beyond its terminus it becomes liable for the whole distance. All connecting carriers under such contract become the agents of such contracting carrier for whose negligence or default it is responsible. The connecting lines are regarded as the agents of the initial carrier. *St. Louis Southwestern Ry. Co. v. Elgin Condensed Milk Co.,* 175 Ill. 557; *Illinois Cent. R. Co. v. Frankenberg,* 54 Ill. 88.

One of the contentions of appellant is that the

National Stock Yards Company at East St. Louis is not a carrier but a warehouseman and that when the hogs had been placed on the tracks of the Stockyard's Company they had been placed in charge of a warehouseman. When the the hogs were placed on the tracks of the stock yards company they were not placed at the chutes but a quarter of a mile therefrom. They still had not reached their destination, which was the yards and chutes used by the Woodson-Fennewald Commission Company. They were not consigned to the stock yards company, but to the commission company at said stock yards, and until they were delivered at the chutes of the commission company they were still in transit. The appellant under the rule is responsible for the default of the stock yards company until they were placed at the chutes allotted to the commission company to which they were consigned.

Complaint is made of the giving and refusing of certain instructions. The objections are all based on the theory that the hogs had arrived at their destination when the cars were placed on the tracks of the stock yards company. The instructions lay down the law properly, since under the evidence the stock yards company is a carrier and the hogs did not arrive at their destination until placed at the chutes where they could be unloaded.

At the close of appellee's evidence, the appellant requested a peremptory instruction on the ground that there was a written contract of shipping, namely, the bill of lading. The appellant had made no objection to appellee's evidence. The appellant, after the court refused the peremptory instruction, then produced and introduced the bills of lading and remedied any defect there had theretofore been in the proof.

The jury were justified in finding that there was unreasonable delay in delivering the hogs as the proof shows that they had remained several hours on the tracks of the stock yards company, only a quarter of

a mile from their destination. It is not contended that the appellee did not sustain loss to the amount of the judgment. Finding no reversible error in the case the judgment is affirmed.

*Affirmed.*