338

DuQuoin Packing Company, Appellee, v. Alfred Bonifield, Fred Bonifield and Reuben Bonifield, Appellants.

Term No. 46012.

Opinion filed January 20, 1947.
Released for publication February 20, 1947.

FRANK E. TROBAUGH and STEPHEN E. BRONDOS, both of West Frankfort and M. C. COOK, of DuQuoin, for appellants.

C. E. KIMMEL, of DuQuoin and L. R. STEWART, of Murphysboro, for appellee.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This cause comes before us on appeal from a judgment in the amount of $200 and costs, in favor of appellees, DuQuoin Packing Company, a corporation (hereinafter called plaintiff), and against appellants, Alfred Bonifield, Fred Bonifield and Reuben Bonifield (hereinafter called defendants), which resulted from the verdict of a jury in the sum of $200. On appeal in this cause the appellee has filed a motion to dismiss the appeal for what is alleged to be a failure to file an accurate and sufficient abstract of record. Objections to such motion and affidavits are filed by the respective parties to this appeal and such motion is taken with the case for consideration.

Upon consideration of such motion to dismiss the appeal it does not appear that the failure to abstract in detail the original, rather than the amended order entered by the court below justifies a dismissal of the appeal. We do not believe any protracted discussion of the activities of the parties in this connection is necessary or desirable.

The motion to dismiss the appeal is, therefore, denied.

The action in this cause was based upon a claim for the value of certain skinless sausages which were shipped from plaintiff's meat packing plant near Du-Quoin, Illinois, and consigned to Elgin State Hospital at Elgin, Illinois. The evidence disclosed that defendants, who operated as common carriers in the trucking business, issued a freight bill to plaintiffs showing the destination of the shipment as Elgin, Illinois, and nothing therein indicated that the sausages were in bad condition. The cartons contained inspection marks of the department of agriculture. It was shown in the court below that the defendants carried the meat to West Frankfort, Illinois, on the truck in which they first received it, and there transferred it to another truck, which eventually carried it to the dock of defendants in Chicago. The shipment was made in the first instance, on Friday, June 4, 1943. It arrived at the Chicago dock of defendants on Saturday, June 5, and a connecting carrier was then called to complete the carriage of the shipment to the consignee. The Friday and Saturday involved were very warm days and there was no refrigeration on the truck of the defendants, nor were any refrigerating facilities furnished by them at any time, and apparently, not to any of the shippers who shipped on their trucks. The connecting carrier in Chicago picked up the shipment and stored it in the warehouse of the carrier in Elgin under refrigeration. There was evidence that at the time the shipment was picked up the boxes were broken and the sausage had an offensive odor. When the shipment was finally delivered to the Elgin State Hospital on Monday it was rejected as unfit for food. It was thereafter returned to plaintiff's plant, where plaintiff put the meat in its waste product, or tankage.

It was claimed by plaintiff that the shipment was

lessened or reduced in value in the sum of $225 as the result of the failure of defendants to perform their duty as common carriers. The evidence showed that the shipment would have had a value of $247 at Elgin if delivered in good condition, and that the market value thereafter was only $22 when it was finally delivered again at DuQuoin. No evidence was introduced on behalf of defendant, except the photostatic copy of the receipt given defendants by the connecting carrier. There was no affirmative showing of any precautions taken by the defendants to protect the shipment, even though the evidence indicated that the weather was very warm and humid and that the advisability of refrigeration was discussed with the defendants' driver. The cause was tried by a jury who returned a verdict in favor of plaintiff for $200.

A number of errors are assigned by appellant which we will not discuss in detail, but will treat in the course of this opinion.

The plaintiff in this case made out a prima facie case by showing delivery of the shipment of sausage to the defendants in apparently good condition and their delivery at the destination in a bad condition. It was incumbent upon defendants to meet and overcome such prima facie case (*Jennings v. Baltimore & O. R. Co.*, 194 Ill. App. 358).

Defendants failed to introduce any evidence to meet plaintiff's prima facie case. It was only necessary that plaintiff take action against the "initial carrier" and it was not necessary that any connecting carrier be joined in the action (*Illinois Cent. R. Co. v. Frankenberg*, 54 Ill. 88; *Chicago & N. W. R. Co. v. Simon*, 160 Ill. 648).

It was the duty of defendants to provide all suitable means of transportation and to exercise that degree of care which the nature of the property required to protect it from loss and damage during transportation (*Jennings v. Baltimore & O. R. Co.*,

*supra*). In this case no evidence was offered by defendants of any effort on their part to prevent the spoilage of the meat in transit. In the *Jennings* case, *supra,* (at page 362), it was even pointed out that where a defendant contends that the loss or damage occurred because of the inherent nature of the goods, this defense presupposes that the carrier has performed its duty to carry the goods safely to its destination. The evidence in that case offered on behalf of the defendant merely showed that there was no delay in the shipment, or any mishap during transit, but there was no evidence by the defendant to show that it took any steps to prevent the freezing of the apples accepted by it for transit, nor was there anything to advise the court as to what care these apples had while carried in this train or while standing at stations, nor what care they received at their destination and before delivery. In that case the court stated that unless the courts are prepared to hold the damage by frost, while in transit, is something that the carrier owes no duty to attempt to prevent, the court could hardly sustain the contention that the evidence showed that the defendants used due care, and, accordingly, the court thought that there was an entire failure to rebut the presumption of negligence that arose. The instant case bears a strong similarity in that nothing is before us to show what efforts, if any, were made by defendants to use due care, and we cannot conclude that the damage through deterioration caused by the heat while in transit is something that the carrier owed no duty to attempt to prevent.

There are a number of detailed objections to the order of the court entered in connection with the joinder of the connecting carrier as parties defendant, and to testimony of witnesses, as well as an exhibit in the case, and, likewise, to a number of instructions given and refused. As we have indicated, it was proper for the court to refuse to permit the joinder of the connecting carrier as a party defendant (*Illinois*

*Cent. R. Co. v. Frankenberg, supra*). The testimony and exhibit to which objection was made were not of such character as to justify reversal of this cause.

As to the instructions (of which 47 were offered by the defendant, 16 of which were given and 31 refused), we do not believe it is helpful to discuss them in detail and will merely say that we have examined such instructions, both given and refused, and find no reversible error therein.

■ The further objection that the verdict should be set aside because it is for less than plaintiff claimed cannot be sustained (*Kernan v. Advance Terra Cotta Co.*, 211 Ill. App. 316).

The judgment of the circuit court of Perry county will, therefore, be affirmed.

*Judgment affirmed.*

BARTLEY and SMITH, JJ., concur.