52  597
65  322

## J. W. Browning v. James M. Jones.

1. CRIMINAL CONVERSATION—*Upon What the Case is Based.*—A case for criminal conversation is based on an injury to the person of the plaintiff; hence, the action was often brought in the form of trespass, for the wife could not consent to criminal intercourse, which, in its very nature, is exclusive in the husband.

2. CRIMINAL CONVERSATION—*The Modern Practice.*—The usual practice now is to bring the action in case, as being more in consonance with the consequentiality of the damages to be recovered.

3. DAMAGES—*In Criminal Conversation Case.*—In criminal conversation cases the damages arise out of the breach or destruction of the marriage contract, under and by virtue of which the husband had acquired a right and interest in what is termed in law consortship, that is, the wife's co-operation and aid in every conjugal relation.

4. DAMAGES — *Aggravation of, in Criminal Conversation Cases.*— In criminal conversation cases, the degradation, the mental anguish and distress, the loss of affection and service, if any ensues, are considered in aggravation of damages.

5. CRIMINAL CONVERSATION — *Recrimination Not a Defense.*— Conjugal rights exist, though the husband, by his fault, is living apart from his wife and leading a dissolute life. Recrimination is not a defense to the action for criminal conversation as in a proceeding for divorce.

6. DAMAGES—*Mitigation in Criminal Conversation Cases.*—In Criminal conversation cases desertion, adulteries at any time after marriage and before trial on the part of the husband, together with other gross immoralities and avowals of profligate principles, and loss of affection on the part of the wife, are competent in mitigation of damages.

7. CRIMINAL CONVERSATION—*Elements of Damages.*—In cases of this character, an actual marriage must be proven. Criminal conversation is an invasion of the rights acquired thereby. Whatever damages arise therefrom, as loss of consortship, with all that term implies, aggravated by degradation, distress and mental anguish, if any ensues—like humil

# 598    APPELLATE COURTS OF ILLINOIS.

iation and disgrace, pain and anguish of mind consequent in such injury, should be regarded as natural and proximate damages.

8. DAMAGES—*Proximate in Criminal Conversation Cases.*—The fact that the injuries are of such a nature as not to be susceptible of exact admeasurement in money value, does not make them any the less proximate.

9. DAMAGES—*Vindictive.*—In criminal conversation cases, in addition to actual damages, the criminal conversation being wanton and criminal in its nature and the action being vindictive, the jury are permitted to give damages for the double purpose of setting an example and of punishing the wrongdoer.

10. DAMAGES—*Vindictive, in Criminal Conversation Cases—Competent Evidence.*—For the purpose of proving a case for vindictive damages, proof of the condition in life and circumstances as well of the "husband," as of the party committing the injury, is proper, and should be considered by them in estimating the damages.

11. CRIMINAL CONVERSATION — *Not Different from other Actions in Tort.*—The fact that this action in termed " vindictive " does not distinguish it from other like actions, such as libels, defamation, assault and battery, false imprisonment, etc., which are likewise termed "vindictive." The terms "vindictive," "punitive" and "exemplary," are indifferently employed in describing damages which are beyond compensation.

12. DAMAGES—*When Exemplary Damages Will Be Given.*—Where either of the elements of fraud, malice or oppression, mingle in the controversy, the law permits the jury to give what it terms punitory, vindictive, or exemplary damages.

13. INSTRUCTIONS—*Vindictive Damages.*—In actions where vindictive damages may be allowed, it is error for the court to instruct the jury that the plaintiff is " entitled " to or that they " ought " to give him vindictive damages on the ground that the court thereby invades the province of the jury.

14. EXEMPLARY DAMAGES—*Province of the Jury.*—Exemplary damages are given as a punishment where torts are committed with fraud, actual malice, or deliberate violence or oppression. The province of the jury, in determining the amount of these damages, would be too much invaded if they were instructed it was their duty to allow such damages, instead of being told that they might allow them or were at liberty to allow them.

15. INSTRUCTIONS — *Exemplary Damages.*—An instruction on the question of exemplary damages, which is not only advisory but coercive to make such damages large on the grounds of public policy and for the protection of the home, etc., is erroneous.

16. CHARACTER—*Of Wife in Action for Criminal Conversation.*—In an action by the husband for criminal conversation with his wife, where the character of the wife for chastity has been attacked by evidence of acts of adultery, it is proper to admit proof in rebuttal, to show her general reputation for chastity.

17. EVIDENCE—*Declaration of Witnesses—Corroboration of Their Evidence.*—Proof of declarations made by a witness out of court, in corroboration of testimony given by him on the trial of a cause, is, as a general rule, inadmissible, even after the witness has been impeached or discredited. But it is otherwise where there is some independent evidence tending to show that the witness' account of the transaction was a fabrication of recent date. In such a case it may be shown that he gave a similar account before its effect and operation could be seen.

**Memorandum.**—Action for criminal conversation. Appeal from the Circuit Court of Johnson County; the Hon. Joseph P. Robarts, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict and judgment for plaintiff; defendant appeals. Heard in this court at the August term, 1893. Reversed and remanded. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

*Plaintiff's eleventh instruction assigned for error:*

11. If you believe by a preponderance of the evidence that the defendant, for the purpose of having or continuing sexual intercourse with the plaintiff's wife, eloped with her and went to Oklahoma, where he intended to marry her and where she died, by means of which the plaintiff is permanently deprived of her society, without the consent of her husband, then and in such case you should find for the plaintiff and assess the damages at such sum as you are warranted in assessing under the evidence.

Appellant's Brief, W. W. Duncan and Whitnel & Gillespie, Attorneys.

The ground of the action for criminal conversation, is the infliction upon the husband of some one or more of the following injuries: 1. Dishonor of the marriage bed. 2. Loss of the wife's affections. 3. Loss of the comfort of the wife's society. 4. Total loss of the wife's services where she absconds from her husband, and probable diminished value of services where she does not. 5. The mortification and sense of shame that usually accompany the wrong. Cooley on Torts, 262.

If such injury is inflicted under circumstances of peculiar hardship and oppression, exemplary or punitive damages may be allowed by the jury in favor of the plaintiff. 7 Amer. and Eng. En. of L. 450.

It is necessary that the plaintiff should fix by the evidence a basis from which the jury can determine the amount of damages. 1 Sutherland on Damages, 740; Rea v. Tucker, 51 Ill. 110; Yundt v. Hartrunft, 41 Ill. 16; Peters v. Lake, 66 Ill. 206.

The instructions given for plaintiff ignore this principle and ask the jury to enforce public morals and preserve the sanctity of the marriage relation by assessing such sum of damages against the defendant as the jury deem requisite to that end, provided only that the fact of sexual intercourse shall be found.

It is the province of the jury to pass upon the question as to whether exemplary damages should be allowed, and if allowed, the amount of such damages; and the only question for the court is, whether there is sufficient evidence of fraud, malice, deliberate violence or oppression to warrant the submission of the question of punitive or exemplary damages to the jury. 3 Sutherland on Damages, 469, Ed. 1883, and Vol. 1, page 742; Tetzner v. Naughton, 12 Ill. App. 148; Wabash, St. L. & P. Ry. v. Rector, 104 Ill. 296; Harrison v. Ely, 120 Ill. 83; Kennedy Bros. v. Sullivan, 34 Ill. App. 57; McNay v. Stratton, 9 Brad. 216; Schimmelfenig v. Donovan, 13 Brad. 47.

It is not the form of the action that determines the plaintiff's right to exemplary damages, but defendant's moral culpability, as shown by the evidence. The amount to be awarded should depend upon the conduct and relations of all the parties and the pecuniary circumstances of the defendant. 1 Sutherland on Damages, Vol. 740; Rea v. Tucker, 51 Ill. 110; Ball v. Bruce, 21 Ill. 161; Peters v. Lake, 66 Ill. 206; Yundt v. Hartrunft, 41 Ill. 16.

In mitigation of damages it was proper for defendant to introduce evidence establishing: 1. Previous carnal connection of plaintiff's wife with other men. 2. Her deportment toward defendant tending to prove that she made the first advances. 3. The plaintiff's criminal connection with other women. 4. The bad terms on which plaintiff previously lived with his wife. 5. His improper

treatment of her, and any other facts tending to show either the little intrinsic value of her society, or the light estimation in which plaintiff held it. 6. The declaration of the wife prior to alleged seduction complaining of plaintiff's ill treatment. 2 Greenleaf on Evidence, Sec. 56; Cooley on Torts, 2d Ed., pages 262 to 264 inclusive; Rea v. Tucker, 51 Ill. 110; 3 Sutherland on Damages, 744–45.

The law is that no element of damages can be based on the death of the wife, and the fact of her death can not be taken into account either as ground of the action or as aggravation of damages, and the husband's recovery must be limited to the loss suffered intermediate the injury and death. Cooley on Torts, 2d Ed. *page 226, p. 265; Hyatt v. Adams, 16 Mich. 180; Pack v. New York, 3 N. Y. 489.

When a witness is charged with testifying under the influence of some motive prompting him to make a false statement, or that his testimony is a fabrication of recent date, it may be shown in corroboration of him that he gave a similar account before such motive existed, or before the effect of such could be foreseen; so, also, when his testimony is discredited on cross-examination or by the testimony of others. Gates v. The People, 14 Ill. 433; Lockwood v. Betts, 8 Conn. 130; Robb v. Hackney, 23 Wend. 50; Stolp v. Blair, 68 Ill. 541; Herrick v. Smith, 13 Hun, 446; Hester v. Conn, 85 Pa. St. 139; Commonwealth v. Jenkins, 10 Gray, 485; People v. Doyell, 48 Cal. 85; State v. Hendricks, 32 Kan. 559; State v. Dennin, 32 Vt. 158; 1 Starkey on Evidence, 187; Phillips on Evidence, 308; 1 Greenleaf on Evidence, Sec. 469; Stephen's Dig. of Law of Evidence (Chase's Ed.), 235, note 3.

APPELLEE'S BRIEF, SPANN & SHERIDAN, ATTORNEYS.

The damages allowed in suits for criminal conversation are penal rather than compensatory, etc. * * * They are often exemplary and punitive. 9 Amer. & Eng. Ency. of Law, 835.

In vindictive actions, and this is now regarded as one, the jury are always permitted to give damages for the double

purpose of setting an example and of punishing the wrong-doer. Grable v. Musgrave, 3 Scam. 373.

" If the party in such case is confined to the actual pecuniary damages sustained, it would most often be no compensation at all above nominal damages, and no salutary effect would be produced on the wrongdoer by such a verdict. But we apprehend that if the act is wrongfully and wantonly committed, the party may recover in addition to the actual damages, something for the indignity, vexation and disgrace to which the party has been subjected." Chicago and Northwestern Railway Company v. Anna Williams, 55 Ill. p. 185, from opinion at page 190; 1 Sedgwick on Damages, Seventh Ed., 53, and Vol. 2, p. 253; 1 Sutherland on Damages, Chap. 9; Reeder v. Purdy, 48 Ill. 262; Yundt v. Hartrunft, 41 Ill. 10; Onsly v. Hardin, 23 Ill. p. 353.

The decided weight of authority is that proof of declarations made by a witness out of court, in corroboration of testimony given by him on the trial of a cause, is, as a general rule, inadmissible, even after the witness has been impeached or discredited. 2 Phillips, Ev., 5th Ed., 973; 1 Starkie, Ev., 147; Robb v. Hackley, 23 Wend. 50; Conrad v. Griffey, 11 How. 480; Gibbs v. Tinsley, 13 Vt. 208; Etticott v. Pearl, 10 Pet. 412.


MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee brought this suit against appellant for criminal conversation, which resulted in his wife's elopement with appellant. The evidence places both parties to this suit in an unenviable light before this court. That appellant was guilty of the offense charged is clearly proven, and that appellee had been guilty of almost open lewdness with the vile strumpet, Nan Bain, who roamed the woods in his neighborhood dressed in men's clothing, the common subject for the gratification of the lust of the lowest, which disgusted and tended to alienate the affections of his wife, is established. He was also guilty of visiting lewd houses. Notwithstanding appellee's conduct, appellant had no moral or other right to debauch his wife. It is evident, however,

that appellee's conduct had weakened, if not destroyed, his wife's love for him, made her less appreciative of the sacredness of the marriage relation, and more susceptible to the wiles of appellant, where passions were but slightly restrained by any moral sense. He deserted his wife and family to elope with appellee's wife, and live with her in an open state of adultery. The evidence shows that he was also guilty of visiting houses of prostitution. The jury brought in a verdict of $2,000 against appellant, which was sustained by the court, and judgment entered thereon, which we feel constrained to set aside, on account, principally, of misdirection in the instructions on behalf of appellee. The instructions proceed on the theory that the suit is wholly in the nature of a public prosecution, for the punishment of the defendant, and to deter others from committing like offenses, by awarding heavy damages.

They are as follows: The italics are ours.

12. Where a person is proven by a preponderance of evidence to have had sexual intercourse with the wife of another, the injured party is entitled to damages *which are given by way of punishment*, whether the husband prove any actual damages or not. Given.

13. You are further instructed that the husband has the exclusive right of sexual intercourse with his wife, and whoever violates this exclusive right is liable in damages, *which are given by way of punishment*, and if the husband loses the service and society of his wife thereby, such additional compensatory damages as he may be entitled to under the evidence should be awarded. Given.

19. On the question of recovery in this form of action the court instructs you that the amount of the recovery or damages *are penal rather than compensatory*, that is, that damages are assessed by way of punishment for the violation of the husband's marital rights. Given.

The jury are instructed that *damages* in this form of action are *given* on *grounds of public policy* for the protection of the home and the marital relation, and in making such assessment if you believe from the preponderance of the evidence

that the defendant is guilty as charged, you *should* assess such damages by way of punishment as may be requisite to the enforcement of the law, and the preservation of the sanctity of the marriage relation, although there may be no proof of actual damages. Given.

A crim. con. case is based on an injury to the person of the plaintiff; hence the action was often brought in the form of trespass; for the wife could not consent to criminal intercourse, which in its very nature is exclusive and sacred in the husband. Hilliard on Torts, Vol. 2, 506; 1 Chit. Pl. 164.

The usual practice now is to bring the action in case, as being more in consonance with the consequentiality of the damages allowed to be recovered. Those damages arise out of the breach or destruction of the marriage contract, under and by virtue of which the husband had acquired a right and interest in, what is termed in law, consortship, that is, the wife's co-operation and aid in every conjugal relation (Bigaonette v. Paulet, 134 Mass. 123), which is the converse of a dishonored bed, the destruction of domestic comfort, of suspicion cast upon the legitimacy of offspring, of mortification and shame to the husband usually accompanying the adultery of his wife. Yundt v. Hartrunft, 41 Ill. 17.

The degradation, the mental anguish and distress, the loss of affection and service if any ensues, are considered in aggravation of damages. Paulet case, *supra*.

Conjugal rights, however, exist, though the husband by his fault is living apart from his wife, and leading a dissolute life. Recrimination is not a defense to this action as in a proceeding for divorce. Hilliard on Torts, Vol. 2, p. 508. But desertion, adulteries at any time after marriage and before trial on the part of the husband, together with other gross immoralities and avowals of profligate principles, and loss of affection on the part of the wife, are competent in mitigation of damages. Hilliard on Torts, Vol. 2, p. 687.

As is said in Amer. and Eng. Ency. of Law, Vol. 9, p. 835: "The jury considers the value of the wife (arising out of the relation created by the marriage contract)—and in that

connection how much the plaintiff saw of her and cared for her, her easy fall, how far it was caused by the plaintiff's disregard of his marriage obligation." In cases of this character an actual marriage must be proven (Hutchins v. Kimwell, 31 Mich. 126), showing that the damages, whatever they may be, are founded upon the contract. Criminal conversation is an invasion of the rights acquired thereby. Hence whatever damages arise therefrom, as loss of consortship, with all that term implies, aggravated as they may be by degradation, distress and mental anguish, if any ensues, like humiliation and disgrace, (C. & A. R. R. Co. v. Flagg, 43 Ill. 368,) pain and anguish of mind consequent in such injury, (I. & St. L. R. R. Co. v. Stable, 62 Ill. 320,) in other personal injury cases, should be regarded as natural and proximate.

The fact that the injuries are of such a nature as not to be susceptible of exact admeasurement in money value does not make them any the less proximate. "The actual pecuniary damages in actions for defamation, as well as in the other actions for torts, can rarely be computed, and are never the sole rule of assessment." Grable v. Margrave, 3 Scam. 373. This feature of proximate damages has been treated at some length, so as to place the foundation of this action upon clearly recognizable legal grounds.

In addition to such damages, criminal conversation being wanton and criminal in its nature, and, therefore, the action being vindictive, "the jury are always permitted to give damages for the double purpose of setting an example and of punishing the wrongdoer. For these purposes, proof of the condition in life and circumstances, as well of the ' husband,' as of the party committing the injury, is highly proper, and should be considered by them in estimating the damages." Margrave case, *supra;* Peters v. Lake, 66 Ill. 506. The fact, however, that this action is termed " vindictive " does not, as seems to have been assumed in the instructions given on behalf of appellee, distinguish it from other like actions, such as libels, defamation, assault and battery, false imprisonment, etc., which are likewise termed " vindictive." The terms " vindictive," " punitive " and " exemplary " are indifferently employed in describing

damages beyond compensation. As is said in Sedgwick on the Measure of Damages, 6th Ed. p. 35, where.either of the elements of fraud, malice, or oppression mingle in the controversy, the law permits the jury to give what it terms punitory, vindictive or exemplary damages. Consolidated Coal Co. v. Haeni, 146 Ill. 628.

The Supreme Court of this State has uniformly held that in such actions it is error for the court to instruct the jury that the plaintiff is "entitled" to or that they "ought" to give him vindictive damages, on the ground that the court thereby invades the province of the jury. Holmes v. Holmes, 64 Ill. 294; Collins v. Waters, 54 Ill. 484; Consolidated Coal Co. v. Haeni, 146 Ill. 628.

In the latter case it is said: "Exemplary damages are given as a punishment, where torts are committed with fraud, actual malice or deliberate violence or oppression. The province of the jury in determining the amount of the punitive damages would be too much invaded if they were instructed it was *their duty* to allow such damages, instead of being told that they might allow them or were at liberty to allow them."

The series of instructions given in this case on the question of punitive damages were not only coercive but advisory to make such damages large "on the grounds of public policy and for the protection of the home," etc.

The eighteenth instruction was bad for calling the jury's special attention to a particular part of the evidence. The eleventh instruction is conceded to be erroneous for making the death of the wife the basis of permanent loss to the plaintiff.

It is thought the circumstances tend to show that appellant wrote the letter introduced in evidence that was taken from the coffin, although it is somewhat singular no proof was offered of handwriting.

The proof on this point is not very satisfactory.

There is no reversible error in permitting the witnesses, Ella Mount and Belle Veach, to testify, after the appellee had closed his evidence; neither would it have been error, under the facts disclosed as to previous knowledge at least of one

of the witnesses' evidence, to have refused to permit them to testify.

There was no error in admitting proof in rebuttal on behalf of appellee to show the general reputation for chastity of his wife which had been specifically attacked by evidence of acts of adultery. 2 Greenleaf on Ev., Sec. 58, casts a doubt upon the competency of such proof, but 1 Wharton on Ev., Sec. 51, holds it is competent.

The wife being dead, the latter authority is more in accord with our view of what is right.

The relation of conversation by appellee between himself and wife, was principally confined to what was necessary to explain certain acts of his. Such conversation should be carefully and closely confined and not be permitted to extend so as to get her statements as independent evidence before the jury. The offer of evidence by appellant, to show that Seibman had made statements to other parties of his relation with Mrs. Jones, before he could be suspected of being improperly influenced, was properly excluded, for the reason that his evidence was only directly attacked by impeachment and not by independent proof; that of itself would indicate that his story was a recent fabrication. It is true many questions were asked him on cross-examination for the purpose of discrediting his testimony on that point, but though such cross-examination may have resulted in contradiction, or as tending to show recent fabrication, yet that, of itself, is not sufficient to admit evidence on former declaration not under oath. In the Blair case, 68 Ill. 543-4, it is said : " We find the decided weight of authority to be that proof of declarations made by a witness out of court, in corroboration of testimony given by him on the trial of a cause, is, as a general rule, inadmissible, even after the witness has been impeached or discredited."

Had there been some independent evidence tending to show that the witness' account of the transaction was a fabrication of recent date, then it might have been shown that he gave a similar account before its effect and operation could be seen. Ibid.

For reasons stated, we reverse and remand the cause.