THE CHICAGO CONSOLIDATED TRACTION COMPANY

*v.*

TILLIE MAHONEY.

*Opinion filed October 23, 1907—Rehearing denied Dec. 10, 1907.*

1. DAMAGES—*when exemplary damages may be awarded.* In an action against a street railway company for damages for the forcible ejection of the plaintiff from a car, exemplary damages may be awarded if the acts of the conductor when forcibly ejecting the plaintiff were of a wanton, gross or outrageous character.

2. SAME—*malice need not be expressly proved to authorize exemplary damages.* To authorize exemplary damages in an action against a street railway company for damages for the forcible ejection of the plaintiff from a car it is not necessary to prove express malice, if the proof shows that the conductor acted with a wanton, willful or reckless disregard of the plaintiff's rights, since, in such case, malice will be inferred.

3. SAME—*exemplary damages may be awarded partly to compensate plaintiff and partly to punish the defendant.* If the facts stated in an instruction, which the jury are required to find from the evidence, are such as to authorize exemplary damages, it is not error for the instruction to advise them that if they "further believe, from the evidence, that justice and public good require it" they will not be confined, in their verdict, to the actual damages proven, but "may give exemplary damages, not only to compensate the plaintiff, but to punish the defendant and deter others from the commission of like offenses."

4. INSTRUCTIONS—*when modification of an instruction is proper.* An instruction for the defendant street railway company advising the jury that if its conductor demanded a fare and the plaintiff failed to pay her fare or produce a transfer entitling her to ride, "then the conductor had a legal right to eject her from said car," is properly modified by adding the words, "subject to the limitation elsewhere laid down in these instructions," as, otherwise, the instruction would authorize the use of any degree of force.

5. EVIDENCE—*what competent as part of res gestæ.* In an action for damages for forcible ejection of the plaintiff from a street car for not paying her fare, testimony of a witness that she saw the plaintiff drop her transfer on the rear platform as she boarded the car, and that she called the conductor's attention to it, is admissible as part of the *res gestæ*.

6. PLEADING—*an objection that declaration is partly in trespass and partly in case is cured by verdict.* An objection that a declaration is partly in trespass and partly in case cannot be availed of after a plea of the general issue and a verdict.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

Appellee was a passenger on the Ashland avenue line of appellant on March 3, 1902. She paid her fare and secured a transfer entitling her to ride upon a north-bound South-port avenue car, in Chicago. She boarded such a car at Lincoln avenue, and in so doing accidentally dropped her transfer on the back step, where it remained for a time until it was blown into the street. Two other ladies boarded this car at the same time she did. When the conductor came for appellee's fare there was some dispute, which ended by her being put off the car with more or less assistance from the conductor. The testimony as to what was said and the amount of force used by the conductor is conflicting. The testimony of appellee and two of the other lady passengers is to the effect that the conductor told appellee she was a "damned liar," with reference to her statement that she had lost her transfer or as to her statement or question to him concerning his having it; also that he grabbed her violently by the arm and shoved her to the platform and off the car; that he pushed her in the back at the time she was stepping off. The testimony on behalf of appellant by another lady passenger, and by the conductor and motorman, is to the effect that the conductor did not use force in putting appellee off the car; that he told her she must produce her transfer, pay her fare or get off; that he took her by the arm or put his hand on her shoulder when she got up from the seat but did not use force, and that she walked to the rear of the car and stepped to the ground without assistance; that he did not call her a damned liar or use other

insulting terms; that she stated that if he put her off the car she would make trouble for him,—that she had influential friends.

It appears from the testimony of the witnesses on both sides that the car was either stopped at the time appellee stepped off or was going slowly; also, that after the conductor told her she must get off, and before she actually did leave, she sat down beside one of the passengers to get her name and address, which she wrote on a card taken from her pocket-book for that purpose. There is testimony also to the effect that the conductor's attention was called to the fact that the transfer was dropped on the step of the car at the time that occurred, by one of the lady passengers who got on at the same time appellee did, and that the conductor smiled but did nothing more. He testified he saw a lady pointing to something but did not know what she was pointing at. Appellee testified that her arm became black and blue the next day where the conductor grasped it and remained in that condition from ten to fourteen days, and that during that time the least excitement caused her to fall into a faint; that she was hysterical at times during that ten to fourteen days and very nervous, but before the occurrence had never fainted or been hysterical. The testimony of the family physician, as well as that of a sister-in-law, tends to confirm appellee's statement as to the condition of her arm, as well as to her hysterical and nervous condition, after the occurrence. Appellee testified that she had suffered from an attack of appendicitis shortly before the accident, though an operation was not performed, and that this was the first day she had been out after that sickness. In this statement she was corroborated by her sister-in-law. It appears from the evidence that appellee walked back several blocks after she got off the car, to pick up the transfer; that she went early the next day to the offices of appellant to make complaint against the conductor, and that she went to see her lawyer at his offices down-town before noon of the next day.

Upon a trial in the circuit court the jury returned a verdict of $1250 against appellant. The Appellate Court affirmed the judgment, and the case is now brought here for review.

JOHN A. ROSE, and ALBERT M. CROSS, (W. W. GURLEY, of counsel,) for appellant.

QUIN O'BRIEN, and A. A. McKINLEY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Counsel for appellant admit that on controverted questions of fact, including the amount of damages, the judgment of the Appellate Court affirming that of the trial court is conclusive on this appeal, but insist that as the evidence is close and doubtful this court should carefully scrutinize the rulings as to the admission of evidence and see if the instructions state accurately the principles of law applicable to the case. *Kaenders* v. *Montague*, 180 Ill. 300; *Chicago and Eastern Illinois Railroad Co.* v. *Heerey*, 203 id. 492; *Chicago, Rock Island and Pacific Railway Co.* v. *Steckman*, 224 id. 500.

The main contention of appellant is that there was error in the giving of the fourth and fifth instructions for appellee. These instructions read as follows:

4. "The court instructs you that though you may believe, from the evidence, that the plaintiff failed or refused to give the conductor a transfer or a cash fare, the defendant still owed her the duty not to wantonly or maliciously injure her and not to use more force than was reasonably necessary in order to eject her from the car. Therefore if you believe, from the evidence, that the defendant's conductor in charge of said car, acting within the scope of his employment, ejected or attempted to eject the plaintiff from said car, and that in so doing he used more force than was

reasonably necessary in order to eject her, and thereby wantonly and maliciously injured and humiliated her, as charged in the declaration, you should find the defendant guilty.

5. "The jury are instructed that if you believe, from the evidence, that defendant's conductor, while acting for the defendant in the scope of his employment, without provocation assaulted and injured the plaintiff, as charged in the declaration, and that such 'assault was a malicious, aggravated and wanton one and resulted in physical injury to the plaintiff, without fault on her part, and if the jury further believe, from the evidence, that justice and the public good require it, then the law is that the jury are not confined in their verdict to the actual damages proven, if any, but they may give exemplary damages, not only to compensate the plaintiff, but to punish the defendant and to deter others from the commission of like offenses."

The contention is, that the use of the word "thereby" in instruction 4 made that instruction declare that the use of more than reasonably necessary force in and of itself constituted a wanton and malicious injury and humiliation of the plaintiff. Giving this instruction its ordinary and reasonable grammatical construction it does not support appellant's contention. It stated that if, in using such force, the conductor wantonly and maliciously injured and humiliated her, *as charged in the declaration,* etc. The declaration charges that the conductor "wantonly and maliciously assaulted the plaintiff, and called her a liar and other abusive and humiliating names and epithets, with profane language, and he then and there forcibly, maliciously and with undue violence seized the plaintiff and dragged and pushed her and forcibly ejected her from said car." The instruction did not tell the jury, as contended by appellant, that the use of more force than was necessary was a wanton and malicious injury and humiliation, but left it to the jury to find, from the evidence, if it was such a wanton and malicious injury and humiliation as was charged in the declaration.

The rule is, "that to authorize the giving of exemplary or vindictive damages, either malice, violence, oppression or wanton recklessness must mingle in the controversy. The act complained of must partake of a criminal or wanton nature." (*City of Chicago* v. *Martin*, 49 Ill. 241.) If the assault be made with considerable provocation and without malice, yet if it is of a wanton, gross and outrageous character it will authorize exemplary damages. (*Drohn* v. *Brewer*, 77 Ill. 280; *Gartside Coal Co.* v. *Turk*, 147 id. 120.) Malice being a question of fact and for the consideration of the jury, it is not necessary that express malice should be proved. If it appears that the party has acted with a wanton, willful or reckless disregard of the rights of the plaintiff, malice will be inferred. *Farwell* v. *Warren*, 51 Ill. 467; *Donnelly* v. *Harris*, 41 id. 126; 1 Sedgwick on Damages, (8th ed.) secs. 363-368, inclusive; 12 Am. & Eng. Ency. of Law, (2d ed.) 23.

Under these authorities we cannot see how it is possible to place a reasonable construction upon instruction 4 that would have misled the jury. It contains nothing about exemplary damages, and therefore, considered alone, the jury could not have been misled. This is admitted by appellant, but it is most urgently insisted that, taken in connection with instruction 5, the jury would be misled into giving such damages if they believed that the appellant used unnecessary force in ejecting plaintiff from the car. The instructions must be considered as a series. If it be assumed that the jury considered instructions 4 and 5 together, then it must also be assumed that they considered instruction 19 given for appellant along with the other instructions, and said instruction 19 states the rule as contended for by appellant, that even though the jury believed that defendant was guilty of negligence, yet it could not be found guilty "unless the plaintiff shows, by a preponderance of the evidence, that the act complained of by plaintiff was willful, wanton or malicious." Instructions 4 and 5, considered by

themselves, plainly told the jury that malice, or such wanton recklessness as amounted to malice, must be proved in order to render a verdict against appellant for exemplary damages.

Appellant also contends that instruction 5, as worded, erroneously permitted a double assessment of exemplary damages, partly to compensate the plaintiff and partly to punish the defendant. The decisions are not in entire harmony on the question whether, in such cases, exemplary damages are only incidental to compensatory damages; but whatever may be the first or controlling consideration, it is evident "that the theory of exemplary damages involves a blending of the interests of society in general with those of the aggrieved individual in particular." (12 Am. & Eng. Ency. of Law,—2d ed.—p. 7; *Cook* v. *Ellis*, 6 Hill. 466.) In this last case it was held that exemplary damages and a fine imposed in the name of the People depended on the same principle; that both are penal and intended to deter others from the commission of a like crime. In *McNamara* v. *King*, 2 Gilm. 432, this court said (p. 436) : "In this class of cases the jury may give exemplary damages, not only to compensate the plaintiff but to punish the defendant." In *Ously* v. *Hardin*, 23 Ill. 352, we held that the "jury may give smart money in the shape of heavy damages, not as compensation, alone, for the injury received, but as punishment to the defendant who did the wrong." See, also, *Illinois and St. Louis Railroad Co.* v. *Cobb*, 68 Ill. 53; *Cutler* v. *Smith*, 57 id. 252; *Grable* v. *Margrave*, 3 Scam. 372; *City of Chicago* v. *Martin, supra; Welch* v. *Ware*, 32 Mich. 76; *Brown* v. *Swineford*, 44 Wis. 282.

It is also objected that this instruction submits to the jury, to be found from the evidence, whether "justice and public good require" that exemplary damages be assessed, and it is insisted that the question whether "justice and public good require" exemplary damages is one of law, and not one of fact to be submitted to the jury. In *Hazard* v. *Israel,* 1 Binn. (Pa.) 240, it was stated that in vindictive actions

"it is always given in the charge to the jury that they are to inflict damages for example's sake and by way of punishing the defendant." In Sedgwick on Damages (8th ed. vol. 1, p. 351,) the author says that it has been laid down as a general rule "that with a view to promote the peace and quiet of society and to protect everyone in the full enjoyment of his rights the jury are at liberty to give exemplary or vindictive damages." In *Day* v. *Woodworth*, 13 How. 363, the Supreme Court of the United States held that in cases of trespass where the injury is wanton and malicious, the court would permit juries to add to the measured compensation of the plaintiff something further by way of punishment or by way of example, as smart money; that this has always been left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case. In *Voltz* v. *Blackmar*, 64 N. Y. 440, it was held that in such cases the jury, in fixing damages, "may disregard the rule of compensation, and beyond that may, as a punishment to the defendant and as a protection to society against the violation of personal rights and social order, award such additional damages as in their discretion they may deem proper." In *Wabash, St. Louis and Pacific Railway Co.* v. *Rector*, 104 Ill. 296, it was held error to instruct the jury that the party was entitled to vindictive damages as a matter of right, it being held that the question of such damages was not a question for the court but for the jury. This same doctrine was approved in *Harrison* v. *Ely*, 120 Ill. 83, and *Consolidated Coal Co.* v. *Haenni*, 146 id. 614. It is for the court to determine whether the evidence tends to show facts which warrant such damages; the sufficiency of the facts is for the jury. The amount which may be recovered as a punishment is for the jury in the first instance, but subject to review by the court. (2 Sutherland on Damages,—3d ed.—sec. 402.) In *Foote* v. *Nichols*, 28 Ill. 486, an instruction substantially in the form of said instruction 5 was approved

by this court, and the language complained of, namely, the jury "may give exemplary damages, not only to compensate the plaintiff but to punish the defendant," was used and the instruction held correct. Manifestly, on principle and from the authorities, the question as to how much exemplary damages shall be allowed on the grounds of justice and public policy must in the first instance be left to the jury.

Complaint is also made that the second instruction given for appellee was misleading is not being applicable to the facts in the case. That instruction reads:

2. "When it is said in these instructions that the plaintiff must have been in the exercise of ordinary or reasonable care at and before the time of the accident, it means that she was required to exercise such care as a reasonably prudent person would use under the same circumstances."

None of the other instructions given refer in any way to the care that must be exercised by the plaintiff, and the word "accident" is not an apt term for the ejecting of plaintiff from the car. However, we cannot see how it misled the jury. If they understood anything from it that was applicable to the case, it doubtless was that in order to recover she must have been in the exercise of ordinary and reasonable care when ejected from the car. If she was ejected maliciously, recklessly and wantonly, this would be more than the law would require. The giving of this instruction, at the most, was harmless error.

Complaint is also made of the modification by the court of the appellant's instructions 6 and 7. These instructions, when presented to the court, stated, in substance, that if the jury believe, from the evidence, that when the conductor demanded a fare appellee failed to pay her fare or produce a transfer entitling her to passage, "then the conductor had a legal right to eject her from said car." The trial judge added immediately after the words just quoted, in each instruction, the words, "subject to the limitation elsewhere laid down in these instructions." The instructions as first

drawn were faulty in not stating the manner in which the conductor could legally eject her from the car. On the facts in this case, had those instructions been given without modification, the jury might well have thought them to mean that the conductor would have a legal right to eject her, even though it was done wantonly, maliciously and recklessly. Had they been given in that form they would have been in conflict with instructions 16 and 17 asked and given for appellant. These last instructions contained all the essential qualifications. The only criticism of the modification is, that all the instructions are to be read as a series, and such words expressly added to a certain few of the instructions might lead the jury to think that the others which did not have such words attached were to be considered by themselves and not in connection with all the other instructions. Considering the entire instructions as a series we think the jury understood what the court meant by the modifications.

Complaint is also made of the admission of the testimony of a certain witness on behalf of appellee as to seeing the transfer on the step and as to the conductor looking at it. This testimony was a part of the *res gestæ,* and therefore properly admitted. *Galena and Chicago Union Railroad Co.* v. *Fay,* 16 Ill. 558; *Chicago Union Traction Co.* v. *Brethauer,* 223 id. 521; 1 Sutherland on Damages, (3d ed.) sec. 405.

Complaint, inferentially, is made that the declaration is partly in trespass and partly in case. Whatever force that objection might have had if raised at the proper time, it cannot now be availed of after a plea of general issue and verdict.

Upon a careful examination of this record, assuming, as claimed by appellant, that the evidence is close and doubtful, we find no reversible error. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*