Paul Serletic et al., Appellees, v. Rudolph Jeromell, Appellant.

Gen. No. 42,888.

Opinion filed November 30, 1944. Released for publication December 12, 1944.

HINSHAW & CULBERTSON, of Chicago, and MARK O. ROBERTS, of Springfield, for appellant; MARK O. ROBERTS, of Springfield, of counsel.

GEORGE E. URETZ and F. PATRICK CONLON, both of Chicago, for appellees; F. PATRICK CONLON, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

While driving his Chevrolet car in a northerly direction on Blackstone avenue at about 5:00 o'clock in the afternoon on June 4, 1941, Paul Serletic, accompanied

by his wife Elizabeth and their four-month-old minor son Guy, collided with defendant's truck at the intersection of 72nd street, damaging his car and injuring Mrs. Serletic and the child. Their respective causes of action were combined in one count, charging negligence or in the alternative wilful and wanton conduct. Trial by jury resulted in general verdicts and judgments for each of the plaintiffs as follows: for Paul Serletic, $125; for Elizabeth Serletic, $150; and for the minor child Guy, $7,000. Thereafter defendant's motion for judgment notwithstanding the verdict as to plaintiff Paul Serletic was sustained, presumably because no evidence was offered as to damages to the car, and judgment of not guilty as to that claim was entered, from which no appeal was taken. Motions for judgment notwithstanding the verdict and for a new trial as to Elizabeth Serletic were overruled, and judgment for $150 was entered in her favor. As to the minor, Guy, whose cause of action was brought by his mother and next friend, it was ordered that a remittitur of $2,000 be filed, and thereafter defendant's motions for judgment notwithstanding verdict and for a new trial were denied, and judgment was entered in his favor for $5,000. Defendant appeals.

The record discloses that the accident occurred in a residential neighborhood, with apartment buildings on all but the southwest corner of the intersection. There were no traffic signs or signals at any of the corners. The weather was fair, dry and warm, and the visibility clear. As usual in such cases, there was contradictory evidence as to the speed of the respective vehicles and their distance from the intersection. Paul Serletic testified that immediately preceding the collision he was driving north on Blackstone avenue toward 72nd street, with no traffic ahead and none to the south of the intersection, at approximately 20 miles an hour; that as he approached 72nd street he reduced his speed to about 10 miles, and just before reaching the

intersection he put his car in second gear and "made a short stop." He was then about 10 feet from the building line along 72nd street, and looking toward the east he observed defendant's truck approaching about 150 feet away. There was no other traffic in either direction at the time. He then started to cross the street rather slowly, as he testified, and when he had passed about three feet beyond the center of the intersection, defendant's truck struck his car near the right rear wheel, knocked it across the west half of Blackstone avenue up over the northwest corner and overturned it so that it rested on its left side. Guy Serletic was thrown out of his mother's arms and severely injured. Mrs. Serletic, who was badly bruised, and the baby were taken to a hospital, where she remained four days and was then confined to bed at home for a week.

Carl A. Carlson, plaintiffs' only other occurrence witness, testified that he was walking east on the north side of 72nd street, and was about 150 feet from the corner of the intersection just before the accident; that there were no cars parked along the street on either side; that he noticed the Chevrolet just as it was pulling up to 72nd street, going north, and about the same time he observed defendant's truck about 150 feet east of 72nd street traveling in a westerly direction. He stated that "the Chevrolet northbound car slowed down as it came up to the intersection. He didn't come to a dead stop, but he slowed up, then he went across 72nd street. After he started up to cross 72nd I imagine, oh, I will say he was traveling about 10 miles an hour, around that. And then I saw a vehicle proceeding west on 72nd street. I saw the northbound Chevrolet car struck by this truck. The Chevrolet car at the time of the impact was past the center of 72nd street when the truck hit him. The front of the truck came in contact with it. I kept the truck in view from the time I first saw it up until the time of the collision. The truck was pretty close up to the curb when it

started to decrease its speed. I am able to estimate speed of an automobile and truck. From the time I first saw the truck up to the time it slowed down, it was traveling well, 40 to 45 miles an hour. From that point to the point of impact, in my judgment, he was trying to stop. He was putting on his brakes. He was skidding right into the other fellow that hit him.''

Defendant was called by plaintiffs as a witness under section 60 of the Practice Act [Ill. Rev. Stat. 1943, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060]. He did not testify again, and this was the only evidence on the facts as to his version of the accident. He stated that he was operating a 1936 Dodge panel one-ton truck, in good mechanical condition, with four-wheel brakes; that as he approached Blackstone avenue he was driving between 25 and 30 miles an hour but diminished his speed as he approached the intersection, and first observed the Chevrolet car when he (defendant) was about 50 feet east of Blackstone avenue. ''He came up there a little ahead of me. At that time the other car was going north. He was not over the center line. His car at that time was about even with the building line, that is, about the center line of the street—came up to it to make a stop. The building line is about ten feet back of the intersection, so at the time I diminished my speed I was about twenty-five to thirty feet back and he was about ten feet back. When I was fifty feet away from the intersection I didn't have any trouble seeing this other car, we were both up close to the intersection. I saw him proceeding slowly there, he didn't come to a dead stop, according to me. When I saw him he was fifty feet away, Mr. Serletic was going around twenty-five miles an hour and I was going twenty-five to thirty. I saw him slow up to stop, to almost a stop. The Chevrolet diminished its speed and slowed down to about eight to ten miles per hour. My truck came in contact with the Chevrolet as it was crossing the intersection. I hit the right rear

wheel of the Chevrolet. He was not over the center line at the time of the impact. When I hit him that was not on the south side of 72nd street. He wasn't across the center line.''

Defendant argues that plaintiff's negligence was the proximate cause of the collision, and that the verdicts were therefore contrary to the manifest weight of the evidence. He relies principally on section 68 of the Motor Vehicle Law (Ill. Rev. Stat. 1943, ch. 95½, par. 165 [Jones Ill. Stats. Ann. 85.197]) as entitling him to the right of way. The interpretation of the right-of-way rule has frequently received the attention of courts in this and other states, and the rules applied, as we understand them, are now fairly well settled in Illinois, whose courts invariably emphasize the consideration of two elements: (1) the relative position of the two cars with respect to the intersection; and (2) the relative rates of speed. *Heidler Hardwood Lumber Co. v. Wilson & Bennett Mfg. Co.*, 243 Ill. App. 89, reviewed the authorities in this State on the subject and pointed out that the true construction of such a statute was laid down in *Ward v. Clark*, 232 N. Y. 195, 133 N. E. 443, an opinion by Judge Cardozo. Other decisions to the same effect are *Salmon v. Wilson*, 227 Ill. App. 286; *Darling & Co. v. Yellow Cab Co.*, 238 Ill. App. 326; *Schwartz v. Lindquist*, 251 Ill. App. 320; *Coleman v. Hait*, 293 Ill. App. 615; and *Edwards v. Hill-Thomas Lime & Cement Co.*, 309 Ill. App. 168. These decisions and other cases cited therein all recognize the fact that the statute affords no absolute right of way but that the element of speed and the relative position of the parties with respect to the intersection must be given consideration.

In *Ward v. Clark*, plaintiff was traveling east on the left, defendant north on the right. At 75 feet from the intersection plaintiff saw defendant 150 feet from the intersection. The speed of both cars seemed to be the same. When plaintiff was 40 feet from the inter-

section he saw the defendant 80 feet away, increased his speed and went almost across the street before he was struck in the right rear by defendant's bumper. Judge CARDOZO, speaking for the court, observed that "The privilege thus conferred is not inflexible and absolute. A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. It helps us little when without it the balance would be unequal. A right of way might turn the scales if, when the plaintiff started to cross, the cars had been equidistant, or nearly so, from the point of the collision, due regard being had also for the speed of their approach. Even with the distances what they were, it was an element which the triers of the facts were to consider in their estimate of conduct. That, in the circumstances of this case, is, we think, the extent of its significance. The plaintiff was not to wait until there was no other car in sight. Such a rule would be unworkable in crowded cities. He was to wait until it was reasonably safe to start. Whether he started when there was danger was a question for the jury." The same reasoning and construction was followed in the recent case of *Krawitz v. Levinstein*, 320 Ill. App. 618, and we think it represents the prevailing rule in Illinois.

The elements of speed and the relative position of the parties disclosed by the record in the case at bar were questions for the jury, who resolved the issues against defendant, and we would not be warranted in disturbing the verdicts as being contrary to the manifest weight of the evidence.

The only parties before the court on this appeal are Mrs. Serletic and Guy. Nevertheless a verdict was returned in favor of Paul Serletic, from which it would be fair to assume that the jury were of opinion that Paul Serletic was free from any negligence. There is, however, another circumstance to be considered. Elizabeth Serletic was sitting in the car with

the baby in her arms. Guy was an infant, four months old, and obviously no negligence was imputable to either the baby or his mother.

Even if it could be assumed that Paul Serletic's negligence was the proximate cause of the accident, we fail to see how his conduct could be imputed to a four-month-old minor. Defendant contends that "the law of the case, as fixed by the issues on the pleadings, determines whether the established negligence of the husband and father shall be imputed to the wife and son," and his counsel argue that "it depends upon agency rather than family relationship," and since the averment in his answer "that at the time of the occurrence plaintiff Paul Serletic was agent or servant of the plaintiffs, or each of them, in the operation of the vehicle then and there operated by him," was not traversed by plaintiff, it stands admitted as a matter of law. We think it a sufficient answer to this contention that a four-month-old infant is incapable of creating an agency relationship as a matter of law or otherwise. Defendant's counsel cite no cases to support their contention, but we find in the recent case of *Palmer v. Miller*, 380 Ill. 256, an effective answer to the question. It was there held that while a minor who lacked only two months of attaining his majority may be held liable for his personal tort, he cannot establish the contractual relationship of master and servant or principal and agent, and therefore cannot be held liable for the tort of another under the doctrine of *respondeat superior*. See, also, *McDonald v. City of Spring Valley*, 285 Ill. 52, holding that "while the parent of a minor is its natural guardian he cannot be said to be the agent or attorney for the child." With respect to Mrs. Serletic no agency relationship to her husband was established either by admission or otherwise. The averments of defendant's answer were merely conclusions of law without any allegations or evidence to support them. Nor can it be contended that she was

not in the exercise of care for her own safety. Her testimony on the subject is brief. She testified that she was riding in the front seat of the automobile, holding the baby in her left arm, observing the traffic as they rode along; that just before they came to the intersection she was looking straight ahead; that her husband slowed up a little, almost to a stop, and then started out again, and all she could remember thereafter was that "something hit us." On this evidence the jury would not have been warranted in holding that she was either contributorily negligent or that her husband was driving the car as her agent.

As an additional ground for reversal it is urged that since the complaint consists of one count alleging negligence and wilful and wanton conduct in the alternative, and the verdicts being general and not specifying the count or theory upon which they are based, the presumption is that they are predicated upon the cause of action of which malice is the gist; and counsel say that since there is no evidence to support the wilful and wanton charge, the court should have allowed defendant's motion for judgment notwithstanding the verdicts on that ground. Defendant did not raise this question on the trial. He presented only a general motion to find him not guilty and submitted the following instruction in support thereof: "The court instructs the jury to find the defendant not guilty." The court's attention was never called to the wilful and wanton charge, evidence of which is said to be inadequate, and therefore defendant cannot raise the point for the first time on review. Under sections 45 and 68 (2) of the Civil Practice Act [Ill. Rev. Stats. 1943, ch. 110, pars. 169, 192, subpar. (2); Jones Ill. Stats. Ann. 104.045, 104.068, subsec. (2)] he could have made a motion to withdraw the wilful and wanton charge, or have requested a separate verdict thereon, but failing to do either he is not in a position to lodge a complaint at this time. In *Smithers v. Henriquez,* 368 Ill. 588, wherein

both negligence and wilful and wanton charges were combined in the complaint, a general motion for a directed verdict in favor of defendant was overruled and a general verdict was returned in favor of plaintiff. The Supreme Court affirmed the Appellate Court ruling in affirming plaintiff's judgment and said: "The claim is that the general verdict cannot support a judgment because of the want of any evidence to support the wilful and wanton count." The court then referred to section 68 (2) of the Civil Practice Act (Ill. Rev. Stat. 1937, ch. 110, par. 192 [, subpar. (2); Jones Ill. Stats. Ann. 104.068, subsec. (2)]) and pointed out that defendant filed only a general motion for directed verdict; that he could have availed himself of the provisions of the statute by demanding separate verdicts on the different counts, or he could have moved for the withdrawal of the wilful and wanton count, and concluded by saying that because of his failure to do either he was not in a position to complain.

Criticism is leveled at various instructions given and refused. We have examined them with considerable care but find them free of such errors as would justify a reversal. The case was fairly tried. The evidence amply supports the verdicts as to Mrs. Serletic and as to her son, who was seriously and perhaps permanently injured. We find no convincing reason for reversal, and therefore the judgments of the superior court are affirmed.

*Judgments affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.