William Madison and Peggy Madison, Plaintiffs-Appellees, v. James A. Wigal, Defendant-Appellant.

Gen. No. 11,168.

Second District, Second Division.

September 24, 1958.

Rehearing denied October 9, 1958.

Released for publication October 9, 1958.

565

Schoede, Schoede & Kavensky, of Rock Island (Harrison H. Kavensky, of counsel) for appellant.

Eagle & Eagle, of Rock Island, for appellee.

JUSTICE WRIGHT delivered the opinion of the court.

This is an action instituted in the Circuit Court of Rock Island County, Illinois, by William Madison and Peggy Madison, against James Wigal to recover damages to their automobile and for their personal injuries occasioned by the alleged negligence and wilful and wanton misconduct of the defendant, James Wigal, in driving his automobile. The jury returned a general verdict for the plaintiff, William Madison, in the sum of $6,000, and a general verdict for the plaintiff, Peggy Madison, in the sum of $9,000, upon which the court entered judgment from which judgment this appeal is taken.

The complaint consists of four counts. Count I is based on negligence and prays for judgment in the sum of $5,000 for Madison's car and personal injuries. Count II is based on wilful and wanton misconduct and prays judgment for $5,000 for William Madison's car and personal injuries and $2,500 punitive damages. Count III is based on negligence and prays judgment in the sum of $10,000 for Peggy Madison for personal injuries. Count IV is based on wilful and wanton misconduct

and prays judgment for $10,000 for Peggy Madison for personal injuries and $5,000 punitive damages.

The collision occurred on March 3, 1957, at 6:00 o'clock P. M., on Route 67, a four lane highway, running between Rock Island and Milan, Illinois. Route 67 is a four lane highway, straight and level with a double yellow line down the center. It was dark, but the weather was clear and the pavement dry. Plaintiff, William Madison, was driving his automobile in a southerly direction and his wife, Peggy Madison, was riding in the front seat next to him. Plaintiff was traveling 30 to 35 miles per hour, in the inside lane of traffic. The defendant was driving his automobile in a northerly direction at approximately 50 miles per hour. Plaintiffs contend that the defendant crossed over the center line into their lane of traffic, colliding practically headon. The defendant testified that at the time of the collision, his car was on the wrong side of the highway but he claimed that the plaintiffs' automobile was also over the center line in his lane. The left front of both vehicles collided. Three State Patrolmen arrived at the scene shortly after the collision and they all testified that the debris and marks on the pavement indicated that the collision occurred in plaintiffs' lane of traffic. Both plaintiffs, plaintiffs' doctor and one State Police Officer, testified that defendant was in an intoxicated condition.

Defendant and one other witness testifed that he was not intoxicated and a bartender, who had served the defendant beer prior to the collision, testified the defendant was not intoxicated. The defendant testified that on the morning of the accident that he had two cans of beer at home. That afternoon he went to the Bringer Inn Tavern and had two more beers. He testified that he next went to the Village Tap Tavern and walked through that tavern without having anything to drink. He then went to the Sunset Tavern and had

two more beers. The bartender at the Sunset Tavern testified that he was in the tavern at approximately 4:00 or 5:00 o'clock P. M., and then when he left the tavern he was not intoxicated and that he was in "good condition."

As a result of the collision, plaintiffs were hospitalized for a period of five days. Plaintiff, William Madison, suffered shock, a broken nose, lacerations to his knee, pulled ligaments and muscles to his hip and a bruised left hand and elbow. He missed six weeks work. He testifed that his hip still bothers him at times. Plaintiff, Peggy Madison, suffered shock, a dislocated left ankle, a fracture of the left fibula, and a complete dislocation of the left tibia. She wore a cast on her leg for six and one-half weeks. Plaintiff, William Madison's loss of wages was approximately $600 and his hospital bill $174.95. Plaintiff Peggy Madison's hospital bill was $109.20, their joint doctor bill was $213, additional household help $260, and $45 miscellaneous expenses. The plaintiff, William Madison, testified that his automobile, which was a total wreck, was valued at approximately $1,000 to $1,500.

The defendant contends that the trial court erred in giving plaintiffs' instructions numbered 5, 6, 7, 8, 9, 12 and 14, and in submitting the question of punitive damages to the jury and in the giving of a general form of verdict being plaintiffs' instruction No. 18.

The record before us reveals that the trial judge at the conference held to settle jury instructions went over plaintiffs' instructions one by one with the defendant's attorney, Mr. Kavensky, and the following occurred with reference to the plaintiffs' instructions numbered 5, 6, 7, 8, 9 and 14:

"The Court: Number Five.

"Mr. Kavensky: O. K.

"The Court: Number Six.

"Mr. Kavensky: O. K.

"The Court: Number Seven.

"Mr. Kavensky: O. K.

"The Court: Number Eight.

"Mr. Kavensky: O. K.

"The Court: Number Nine.

"Mr. Kavensky: I object. There is no evidence at all as to speed greater than is reasonable in this case. . . .

"The Court: Number Fourteen.

"Mr. Kavensky: Number Fourteen, O. K."

The foregoing record discloses that the attorney for the defendant during the conference held to settle jury instructions expressly advised the trial judge that plaintiffs' instructions numbered 5, 6, 7, 8 and 14 were correct. As to instruction No. 9, he said that there was no evidence of unreasonable speed; but inasmuch as there was evidence that Wigal was driving over 50 miles per hour in a 35 mile per hour zone, plaintiffs' instruction No. 9 was properly submitted to the jury.

It has been recognized repeatedly that counsel cannot consent and agree to instructions during the conference held to settle jury instructions in the trial court and then assign as error the giving of such instructions, so consented to, for the first time on appeal. Arboit v. Gateway Transp. Co., 15 Ill.App.2d 500, 146 N.E.2d 582; City of Waukegan v. Stanczak, 6 Ill.2d 594, 129 N.E.2d 751; Thomas v. Weber, 14 Ill.App.2d 562, 145 N.E.2d 128; Sunga v. Lee, 13 Ill.App.2d 76, 141 N.E.2d 63.

Plaintiffs' instruction No. 12 was of the standard type of instruction given in a personal injury action on the subject of the elements of damages which might be considered. It advised the jury, among other things, that in assessing damages they should assess such sums "as you find and believe from the evidence will fairly and reasonably compensate William Madison" and the jurors were further instructed that "you

570

may take into consideration . . . . the probable duration of plaintiffs' said injuries, if any, and the extent, if any, to which you find and believe from the evidence same are permanent." Defendant contends that the giving of this instruction was error for the reason that there was no testimony that the plaintiff, William Madison's injuries were permanent. Although the evidence concerning the permanency of the injuries of William Madison was meager, we believe that the jury was properly instructed on this element and that there was sufficient evidence in the record to justify the giving of plaintiffs' instruction No. 12, and the giving of the instruction did not constitute reversible error.

 The defendant next urges that the trial court erred in submitting to the jury the question of punitive damages on the theory that punitive damages may be awarded only in cases of intentional wrong where malice is the gist of the action. With this contention we cannot agree. Exemplary damages, punitive damages, and vindictive damages are synonymous, Roth v. Eppy, 80 Ill. 283. Punitive damages have always been recoverable at common law. Punitive damages incidentally punish the party against whom they are assessed, but their primary purpose is a warning to deter such a party and others from committing acts similar to those for which the damages are awarded. Punitive damages are not compensatory although they cannot be awarded unless actual damage is shown, Fentz v. Meadows, 72 Ill. 540. Punitive damages are recoverable only when the conduct complained of is accompanied by certain aggravating circumstances, singularly or in combination. Such aggravating circumstances include wantonness and wilfulness, Wabash, St. L. & P. Ry. Co. v. Rector, 104 Ill. 296; malice, Fidelity & Casualty Co. of New York v. Gibson, 135 Ill. App. 290, aff'd 232 Ill. 49, 83 N. E. 539; fraud, Browning v. Jones, 52 Ill. App. 597; oppression, Eshelman v.

Rawalt, 298 Ill. 192, 131 N. E. 675; violence, Hemsteger v. Nelson, 181 Ill. App. 377, and recklessness, LaCerra v. Woodrich, 321 Ill. App. 107, 52 N.E.2d 461.

■ The rule is, that to authorize the awarding of punitive damages, either malice, violence, oppression or wilful and wanton misconduct must be present in the controversy. City of Chicago v. Martin, 49 Ill. 241; Chicago Consol. Traction Co. v. Mahoney, 230 Ill. 562, 82 N. E. 868.

■ ■ Malice being a question of fact for consideration by the jury, it is not necessary that express malice be proved. If it appears that the defendant has acted with a wanton, wilful or reckless disregard of the rights of the plaintiff, malice may be inferred, Chicago Consol. Traction Co. v. Mahoney, supra; Farwell v. Warren, 51 Ill. 467; Donnelly v. Harris, 41 Ill. 126.

As was stated in Holmes v. Holmes, 64 Ill. 294, the doctrine of punitive damages is too firmly rooted in our jurisprudence to be disturbed. In Wabash, St. L. & P. Ry. Co. v. Rector, 104 Ill. 296, the following rule was recognized at pages 303–304:

"Where an injury is wantonly and willfully inflicted, the jury, may in addition to the actual damages sustained, visit upon the wrong-doer vindictive or punitive damages by way of punishment for such willful injury, but it is not understood the injured party is 'entitled' to such damages as a matter of right, . . . A party may recover the actual damages inflicted by the wrong-doer, but whether he may have damages in addition thereto, rests largely in discretion of the jury, under the circumstances, and they should be left free to exercise their judgments in that respect."

■ From the evidence in this case the jury could well have believed that the defendant, while under the influence of intoxicating liquor, drove his car into the wrong traffic lane of a straight, flat four lane highway and struck the car of the plaintiff causing the injuries

and damages here complained of. Under such circumstances, the assessment of punitive damages is proper.

Defendant lastly objects to plaintiffs' instruction No. 18 which was in three parts as follows:

"You are instructed that your verdict shall be in one of the following forms:

"1. You are instructed that if you find the issues for William Madison and Peggy Madison, the form of your verdict shall be:

> We, the jury, find the issues for William Madison and Peggy Madison, and we find James Wigal guilty and we award damages to William Madison in the amount of $......, and we award damages to Peggy Madison in the amount of $.......

"2. You are instructed that if you find the issues for James Wigal, the form of your verdict shall be:

> We, the jury, find the issues for James Wigal and we find William Madison guilty and we award damages to James Wigal in the amount of $.......

"3. You are instructed that if you find against William Madison and Peggy Madison on the complaint and against James Wigal on his counterclaim, the form of your verdict shall be:

> We, the jury, find against William Madison and Peggy Madison on their complaint and we find James Wigal not guilty and we find against James Wigal on his counterclaim and find William Madison, not guilty.

(Write your verdict on a separate sheet of paper, all of you sign it; and return your verdict together with the instructions and exhibits into open court.)"

Defendant objects to the general form of verdict on the basis that the verdict should separate the amount that might be assessed for punitive damages and the

573

amount that might be assessed for actual damages. Defendant contends that there should have been a separate verdict for punitive damages and actual damages and as authority for this proposition he cites sec. 68(3), chap. 110, Ill. Rev. Stats. 1957. This subsection provides as follows:

"If there are several counts in a complaint, counterclaim or third-party complaint based on different demands upon which separate recoveries might be had, the court shall, on the motion of any party, direct the jury to find a separate verdict upon each demand."

Defendant, in the trial court, objected to the general form of verdict tendered by plaintiffs and requested the trial court to submit forms of verdicts separating the punitive damages demanded in Counts II and IV from the actual damages in Counts I and III. Defendant contends that unless this is done a party would always be foreclosed from knowing the amount of actual and punitive damages awarded and whether or not either or both might be excessive or inadequate. In the case at bar, the plaintiff, William Madison, demanded $5,000 compensatory damages and $2,500 punitive damages. The verdict for him was in the sum of $6,000. The plaintiff, Peggy Madison, demanded $10,000 compensatory damages and $5,000 punitive damages. The verdict for her was $9,000. It is obvious from the $6,000 verdict that the jury awarded punitive damages to William Madison. However, the amount of punitive damages cannot be ascertained from the verdict. Whether punitive damages were awarded to Peggy Madison is a matter of conjecture. However, as to both, the amount of punitive damages awarded is left in doubt.

Counsel for the plaintiffs and defendant have cited no authorities interpreting sec. 68(3), chap. 110, Ill. Rev. Stat. 1957, and we have found none. The author-

■■■■■■■■■■

ities which have been cited relate to former sec. 68(2), of the Illinois Civil Practice Act. Prior to the 1955 amendments to the Illinois Civil Practice Act, part of section 68(3) was contained in former sec. 68(2) of the Act which provided, in part, as follows:

"Whenever there are several counts in a complaint based on different demands, the court shall, on the demand of either party, direct the jury to find a separate verdict upon each. . . ."

In McCarty v. Yates & Co., Inc., 294 Ill. App. 474, there was involved the question whether or not separate verdicts should be returned where the complaint consisted of one count charging both negligence and wilful and wanton misconduct. A general verdict was sustained there having been no demand for separate verdicts. However, the court in recognizing separate verdicts in that type of action stated at page 481 as follows:

"In our opinion it is the better practice in such cases that there be a compliance with said paragraph 2 of section 68, as it makes for certainty and tends to prevent confusion. However, we do not think any obligation rests upon the court, in the first instance, to make such submission of different forms of verdict, but that it is incumbent upon a litigant, who desires that same be done, to demand of the court such a direction, and failing to do so such party thereby waives his right, upon appeal, to object to such omission."

The Illinois Supreme Court in Smithers v. Henriquez, 368 Ill. 588, 15 N.E.2d 499, affirming the Appellate Court, 287 Ill. App. 95, 4 N.E.2d 793, recognized that upon demand there should be separate verdicts upon negligence and wilful and wanton misconduct counts. In the Smithers case, the complaint consisted of three counts, the first and third based upon negligence. The second count based upon wilful and wanton miscon-

575

duct. The judgment was entered upon a general verdict. The defendant contended that the general verdict could not support a judgment because of the want of any evidence to support the wilful and wanton count. The Supreme Court held that the defendant could have demanded separate verdicts or could have moved to withdraw the wilful and wanton count and having failed to do so could not then complain. The court stated at page 598 of 368 Ill. and at page 504 of 15 N.E.2d the following:

"The claim is that the general verdict cannot support a judgment because of the want of any evidence to support the wilful and wanton count. Section 68 of the Civil Practice Act (Ill. Rev. Stat. 1937, chap. 110, par. 192) provides that whenever there are several counts in a complaint based on different demands, the court shall, on the demand of either party, direct the jury to find a separate verdict upon each. Defendant filed only a general motion for a directed verdict. He could have availed himself of the provisions of the statute by demanding a separate verdict on the different counts, or he could have moved for the withdrawal of the wilful and wanton count. By failing to do either, he is not in a position to complain."

The rule stated in the Smithers case, supra, was cited, recognized and followed in the case of Serletic v. Jeromell, 324 Ill. App. 233, 57 N.E.2d 896 and Goldschmidt v. Chicago Transit Authority, 335 Ill. App. 461, 82 N.E.2d 357.

█ █ If there is confusion resulting from a general verdict wherein no punitive damages are prayed and where the total amount of recovery would be the same whether the negligence and wilful and wanton counts be separated, then, certainly, additional confusion exists in a general verdict when separate demands for actual and punitive damages are requested. Actual

damages must be proven and awarded in order to substantiate awarding punitive damages, while punitive damages are not compensatory they cannot be awarded unless actual damages are shown, Fentz v. Meadows, 72 Ill. 540. An action based on negligence for actual damages and one based on wilful and wanton misconduct for punitive damages are different demands on which separate recoveries might be had and we think it better practice on motion of a party, under sec. 68(3), chap. 110, Ill. Rev. Stat. 1957, that a separate verdict be returned for actual damages and a separate verdict for punitive damages in order to avoid confusion and the resort to presumption.

██ ██ There is no requirement under this section that the motion for separate verdicts be in writing and the defendant herein objected repeatedly to the form of verdict given and requested separate verdicts during the conference on jury instructions and his point of error has been preserved. The trial court committed reversible error in giving plaintiffs' instruction No. 18 which instructed the jury to return a general verdict.

For the reasons herein stated the judgment of the Circuit Court of Rock Island County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

CROW, P. J. and SOLFISBURG, J., concur.